MISSISSIPPI CENT. R. Co. *v.* ROBERTS *et al.*

(Division B. April 8, 1935. Suggestion of Error Overruled May 28, 1935.)

[160 So. 604. No. 31580.]

488

Brady, Dean & Hobbs, of Brookhaven, for appellants.

490

Hannah & Simrall, of Hattiesburg, for appellants.

Brewer & Montgomery, of Clarksdale, amici curiae.

T. B. Davis and Hall & Hall, all of Columbia, for appellees.

498

Argued orally by **T. P. Brady** and **T. C. Hannah,** for appellant, and by **Lee D. Hall,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

This is a case of injury and death by collision at a railroad grade crossing, and the negligence charged against the railroad company is the failure to give the statutory warning signals. With few exceptions, such a case is the easiest to prosecute and the hardest to defend among all the cases that come before courts of justice. Always the interested parties and the occupants of the vehicle struck at the crossing testify with unanimity that no warning signals were given, and the train crew with similar unanimity testify that the signals were duly sounded as the statute requires; always among those within sight and hearing, there are some who are ready and willing to swear, most of them honestly and with conscientious positiveness, that no signals were given and in particular that the bell did not ring; and there are an equal or more often a greater number who testify, most of them with equal honesty and positiveness, that the whistle blew and the bell

rang; and there is nearly always a verdict for the plaintiff. And thus on appeal there is usually presented to the appellate court, when negative testimony is weighed according to established legal standards as compared with positive testimony, the difficult question whether the verdict is against the great weight, the overwhelming weight, of the evidence.

And such is the case here. A school bus carrying thirty-two children—and eight or ten others who were gratuitously crowded therein—approached a grade crossing in the village of Bassfield at the exact time when the westbound passenger train of appellant railroad company was due at that crossing. The driver of the bus was a minor nineteen years of age. The driver stopped the bus at a point about twenty-six feet from the nearest rail of the main line of the railroad, and, as he claims, he looked and listened for a train. After a brief moment's stop, the driver started forward moving at a rate of about four miles per hour, arriving on the main line track as the train reached the same point, with the result that several occupants of the bus were injured or killed, among the latter being the fourteen year old daughter of appellees, the plaintiffs. It was a cold day and the bus was inclosed by heavy curtains, so that there was no opportunity for the occupants of the bus to see, except that the driver and those on the seat with him could see through glasses near him.

To maintain in their behalf the issue as to the warning signals, plaintiffs introduced fourteen witnesses, and on that issue the defendant railroad introduced twenty-one witnesses. In their briefs the parties have dealt with and analyzed this testimony along the same lines as was done in the opinion in Mobile & O. Railroad Co. v. Johnson, 157 Miss. 266, 126 So. 827, with the result that by their method of analysis and argument plaintiffs show that the evidence preponderates in their favor, while the railroad company shows that the evidence not

only preponderates, but is overwhelming in its favor. We cannot deal with such a volume of testimony in detail. We can only say that the proof preponderates overwhelmingly that the customary signals by the whistle were given, but equally preponderates that the whistle signals, while given at frequent intervals, or repeatedly, were not continuous, as required by the statute as to crossing signals by whistle, or else by bell.

This leaves as the determinative issue whether the signals by the ringing of the bell were continuously sounded. Upon this issue, as best we can make it out by the typewritten record rather than seeing and hearing the witnesses, we conclude that the evidence preponderates in favor of the railroad company; but, this, of course, does not end the difficulty so far as this appellate court is concerned, for before we can interfere, the testimony must so strongly preponderate that we can safely say that it was overwhelming in favor of the appellant; and this is to invite this court into a field of interference which it rarely enters and then only with the most cautious reluctance. The reasons for this reluctance rest in the constitutional limitations upon our powers in respect to the facts, as we fully explained by way of review in Williams Yellow Pine Co. v. Henley, 155 Miss. 893, 125 So. 552.

We cannot safely say that the evidence in the case now before us so strongly preponderates in favor of the appellant as that it is clearly overwhelming. Because of their extremely favorable position upon the ground and in close proximity to the approaching train, and because from the particular circumstances their attention was drawn to it, there were several witnesses for the plaintiffs who made and were able to make a stronger case for the plaintiffs than was that reviewed in the Johnson case, above referred to, and the facts here in support of the verdict are stronger than in either of the several following recent cases in this court, where-

in the court declined to reverse: Yazoo & M. V. R. Co. v. Lucken, 137 Miss. 572, 587, 102 So. 393; Yazoo & M. V. R. Co. v. Beasley, 158 Miss. 370, 130 So. 499; St. Louis & S. F. R. Co. v. Nichols, 161 Miss. 795, 138 So. 364; Yazoo & M. V. R. Co. v. Pittman, 169 Miss. 667, 153 So. 382.

Appellant railroad next contends that even if this court is unable to interfere on the issue of the warning signals and even if, therefore, the case must be determined here upon the conclusion that the statutory signals were not continuously sounded, nevertheless the railroad is entitled to a reversal upon the point that the negligence of the bus driver was the sole proximate cause of the injury. The railroad says that although the bell was not rung, the train was within full view and within three hundred feet of the bus driver when he stopped and looked, and that having looked he cannot be heard to say that he did not see the approaching train. 1 Moore on Facts, pp. 204-206. And since in law he saw the train and thus knew of its near approach, the action of the bus driver in moving forward to a collision with the train was the voluntary, intervening act of an independent agent which had the effect to insulate the negligence of the railroad and to make that negligence the remote cause and the negligence of the bus driver the proximate cause.

The bus driver averred that he did not see the train, and gave it as his excuse for not seeing it that there was a pile of cross-ties so near the railroad track as to cut off his view from the approaching train. The evidence shows the presence of the cross-ties and that they did interfere with a view unless the view were carefully taken with some deliberation to see an approaching train, but the proof strongly preponderates that the ties did not entirely cut off the view and would not prevent the bus driver from seeing the approaching train had he carefully and deliberately looked, taking suffi-

cient time to do so well. There is to be considered also in this connection that the highway crossing was not at right angles with the railroad, and to see an approaching train was not easy or so quickly to be done as had the bus been stopped at right angles with the railroad track. We think the evidence establishes as the more reasonable conclusion from all the facts and circumstances that this bus driver was in a hurry to be on his way, as he was already late, and that instead of carefully looking and listening and taking the time and caution to look and listen well, his stop and gesture of looking and listening was only a gesture pro forma; and, without actually knowing or taking the time to know whether a train was coming or not, he went forward to the consummation of a pitiful catastrophe; which presents, therefore, a case of concurrent negligence, as was the case in Columbus & G. R. Co. v. Lee, 149 Miss. 543, 115 So. 782.

At the request of plaintiffs the court granted an instruction that, under the evidence, plaintiffs' decedent was guilty of no contributory negligence. Considered in connection with some of the detached language used in Yazoo & M. V. Railroad Co. v. Beasley, 158 Miss. 370, at pages 379, 380, 130 So. 499, it might be maintained that there is no error in this instruction. More strictly, however, the instruction is technically erroneous in that it assumes against appellant two issues of fact in dispute. But the technical error is not sufficient to work a reversal in this case for the following reasons: It is well settled by our decisions that a guest or passenger in a vehicle is not chargeable with the negligence of the driver over whom the passenger has no control, until the guest or passenger has become aware of that negligence and of the probable danger thereof, and thereupon fails reasonably to remonstrate or to escape, if escape be safely or reasonably possible. The jury found that the bell did not ring, and the testimony of those of the

occupants of the bus who were introduced as witnesses is that they did not hear any of the sounds of the whistle until the emergency alarm was given, when the locomotive was about one hundred feet or less from the point of collision. If the others in the bus did not hear the whistle until then, we think we ought to accept it as probable that the deceased did not hear it before that time, and that, since she could not see and was in the rear end of the bus some distance from the driver, she would have had no time after the emergency alarm to accomplish anything by way of remonstrance, and nothing towards escape.

The jury returned, into open court, two separate verdicts, one for the plaintiffs against the defendant railroad company for eight thousand five hundred dollars, and another for the plaintiffs against the other defendant, the bus driver, for one thousand dollars. The court stated to the jury that it was irregular to return two separate verdicts; that the jury could return only one verdict and against both defendants in the same amount and in such amount as the jury shall determine, and the court directed the jury to return to their room. Defendant railroad company objected to any further consideration by the jury, and to any oral direction by the court to the jury. This objection was overruled and the jury retired and presently brought in one verdict against both defendants for nine thousand five hundred dollars. The defendant railroad company objected to the acceptance of that verdict by the court and moved for a mistrial. This further objection and motion was overruled, and judgment was accordingly entered for nine thousand five hundred dollars.

We have already stated that the facts reasonably interpreted in the light of the verdict disclose a case of concurrent negligence on the part of both defendants, and it has long been the settled substantive law that, in such cases, when the concurrent negligence produces a

single, indivisible injury, both the defendant tort-feasors are equally liable for the entire damage sustained. In the absence of a statute expressly so authorizing, there is no apportionment or contribution between them. Our statute, sections 605, 606, Code 1930, authorizing separate verdicts as against several defendants is a procedural statute only, and does not, in any respect, alter or intend to alter the substantive law. In order to receive several verdicts under that statute, the substantive law controlling the case must be such as to impose several separable and different respective liabilities, which is not the case here. Cf. Aven v. Singleton, 132 Miss. 256, 96 So. 165.

The court followed the correct procedure in returning the two verdicts to the jury for further consideration with directions that one verdict for an entire sum be rendered. The recent authorities on this point are collected in a note, 30 A. L. R. beginning at page 795. Nor is the power of the trial judge any the less in that particular respect because of section 586, Code 1930, which regulates the manner in which juries shall be instructed by the court. From the earliest times in the state's history, it has been the approved practice, when the verdict is not in legal form, or is ambiguous, or imperfect upon its face or is not responsive to the issues, or is beyond the power of the jury in material respects apparent upon the face of the verdict or verdicts, to require the jury to retire and to return a verdict which in form and effect will be such as the law allows and contemplates as a perfected return in all its formal parts. Prussel v. Knowles, 4 How. (Miss.) 90; Maclin v. Bloom, 54 Miss. 365; Louisville & N. R. Co. v. King, 119 Miss. 79, 80 So. 490; Morris v. Motor Co., 144 Miss. 861, 110 So. 683.

There are forty-five separate assignments of error. All those not covered by the foregoing paragraphs of this opinion may be classed under the general designation of minor errors. They have nevertheless been

carefully considered. The trial lasted several days and the report of it fills four volumes. It would be practically impossible that any trial judge could so well foresee all possible phases and eventualities in such a lengthy trial as not to make some errors, which he would not have made could he have seen the case so well at the beginning and during its progress, as he could see, and we can, at the end upon a deliberate and carefull review of the completed record. And as said in Goins v. State, 155 Miss. 662, 667, 124 So. 785, this court has, years and years ago, abandoned any such visionary expectation as that records of trials shall be technically perfect. The question now is were the errors so serious and prejudicially harmful as to have substantially affected the result in the case, to which we must answer that in our opinion there are materially none such in this case.

Affirmed.