Hugh Vernon HOWARD, Plaintiff,

v.

GENERAL MOTORS CORPORATION,
and W. Leslie Jordan, d/b/a Jordan
Chevrolet Company, Defendants.

Hugh Vernon HOWARD, Mrs. Claire
Howard Summers, Hugh L. Howard,
Mrs. Grace Howard Blaine, and Lee M.
Howard, Plaintiffs,

v.

GENERAL MOTORS CORPORATION,
and W. Leslie Jordan, d/b/a Jordan
Chevrolet Company, Defendants.

Nos. EC 686, 687.

United States District Court
N. D. Mississippi, E. D.
July 22, 1968.

Crawley & Ford, Kosciusko, Miss., for plaintiffs.

Huff, Williams, Gunn, Eppes & Crenshaw, Meridian, Miss., for defendants.

## OPINION OF THE COURT

KEADY, Chief Judge.

Both of these cases, which originated in the Circuit Court of Attala County, present for common decision the propriety of federal court removal by one of the defendants, and they require examination into the state of products liability law in Mississippi. In one case, Hugh Vernon Howard is the sole plaintiff suing for his own personal injuries; in the other case, he is joined by his four adult children seeking recovery for the allegedly wrongful death of his wife, Mrs. Mildred Cameron Howard. Defendants in both cases are W. Leslie Jordan, d/b/a Jordan Chevrolet Company, a resident of Attala County, Mississippi (hereinafter referred to as "Jordan"), and General Motors Corporation, a citizen for purposes of diversity of a state other than Mississippi (hereinafter referred to as "General Motors").

General Motors has sought to remove both cases to this court, urging that the joinder of Jordan, the resident defendant, is fraudulent and was made solely to defeat federal jurisdiction, and also that the claim asserted against General Motors is a "separate and independent claim or cause of action" under 28 U.S.C. § 1441(c). Plaintiffs have responded by moving to remand to the state court.

The declarations in both cases allege in substance the following: On a date not specified, plaintiff Howard purchased from Jordan, a retail dealer of motor vehicles, a 1967 Chevrolet pickup truck which had been manufactured by General Motors. On April 15, 1967, Howard and his family were riding in that vehicle on a public highway near Kosciusko, Mississippi, when the pickup truck collided with a Mack tractor and trailer. Mrs. Howard, a passenger in the truck, was hurled forward into the steering wheel, sustaining fatal injuries. The driver, plaintiff Howard, was also allegedly hurled against the steering wheel. According to both declarations "the steering wheel and assembly then transmitted collision impact force to the plaintiff (or decedent) via the steering column of the plaintiff's pickup truck, * * *" Plaintiff Howard alleges that he received injuries upon impact against the steering wheel because it failed to telescope or collapse, thus greatly aggravating the injuries he suffered when the vehicles collided, and in the death action, the fatal injuries were proximately related to the type of steering apparatus found in the truck. Count I of each declaration seeks recovery on a general negligence theory against General Motors for failure to provide the truck with a "crash-worthy interior", including a telescoping and non-penetrating steering column, and against Jordan for selling it to Howard in such defective condition when the dealer knew, or should have known, of the defective condition, and failed to take precautions against the inherent danger, even though he knew Howard and his family were unaware of the defect. Count II seeks recovery against both defendants on the ground of strict liability in tort. A third count is based on wanton and willful misconduct on the part of both defendants in allowing the pickup truck to be sold upon the open market in its allegedly unsafe condition. In Howard's case alone, there are two additional counts based upon breach of express and implied warranties and misrepresentation.

I

The issue of whether there has been a fraudulent joinder is properly

determined by searching the pleadings in the light of local law to ascertain if a cause of action has been stated against the resident defendant. In making this determination a federal court has the power to pierce the pleadings, but its power to retain jurisdiction over the action is limited to cases where in doing so, it finds that there has been bad faith in the joinder. The motive for joining a resident defendant is immaterial. McAllister v. C. & O. Railway Company, 243 U.S. 302, 37 S.Ct. 274, 61 L.Ed. 735. We think that the correct approach has been illustrated by the Court of Appeals for the Tenth Circuit in its statement that "a mere allegation of fraudulent joinder is not sufficient. * * * The pleader is the architect of his own lawsuit, and the misjoinder of parties or causes of action does not without more amount to a fraudulent joinder. There must be a deducible bad faith purpose to defeat jurisdiction." Updike v. West, (C.A.10th 1949), 172 F.2d 663, 665. It has also been stated that the defendant may show bad faith in joinder by proving that the plaintiff stated the facts knowing them to be false, or with enough information within reach so that he should have known them to be false. Wilson v. Republic Iron & Steel Company, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144; Wecker v. National Enameling & Stamping Company, 204 U.S. 176, 27 S.Ct. 184, 51 L.Ed. 430.

■ It is in the light of the above concepts that we determine that there has been stated a cause of action against Jordan. This determination is reached by analysis of plaintiffs' allegations grounded upon strict liability in tort. The other counts contained in the declarations need not be discussed, since, as long as a cause of action is stated in any count, removal may not be effected.

In support of their contention that a cause of action is alleged to exist against Jordan, plaintiffs place principal reliance upon State Stove Manufacturing Company v. Hodges, 189 So.2d 113 (Miss. 1966). Although the Mississippi Supreme Court did not speak authoritatively upon the precise question here presented, it gave extensive indication of its present attitude toward strict tort liability, and, for this reason, that decision is considered in some detail. Homeowners in Webster County, Mississippi, brought suit in state court against a local contracting firm and State Stove Manufacturing Company, seeking recovery for the destruction of their residence and personal property, brought about by an explosion of the water heater in their home. The water heater was manufactured in Tennessee by the defendant Stove Company, and was purchased by Mississippi contractors from a Tennessee wholesaler. The defendant contractors who had built the plaintiffs' dwelling had the water heater installed by a plumber who negligently failed to install a proper relief valve in the hot water heater as directed by accompanying manufacturer's written instructions. The trial court held that the manner of installing the heater was not causually connected to the explosion, and dismissed the action as to the contractors; but it held the manufacturer liable. Appeals by both the plaintiff and the manufacturer followed. In a sweeping decision, the Mississippi Supreme Court overruled its previous holding in Ford Motor Company v. Myers, 151 Miss. 73, 117 So. 362 (1928), which had required privity of contract as a prerequisite to recovery against a manufacturer by a consumer. The Court did not stop there but proceeded to adopt, under certain express conditions, a rule of strict liability in tort. That doctrine was held applicable to manufacturers of a product, thus leaving no question as to its decided effect upon the status of General Motors as manufacturer of a motor vehicle. The State Supreme Court was also confronted with the status of a seller under the strict tort liability principle, but it failed to clearly state the rule governing a seller in the category of Jordan. Limited to the facts before it, the opinion of the Court simply stated its acceptance of §

402A of the Restatement of Torts, Second,[1] only "insofar as it applies to a manufacturer of a product and to a *contractor who builds and sells a house with a product in it.*" (Emphasis added)

In § 402A of the Restatement of Torts, Second, it is declared unqualifiedly that *any seller* of a defective product unreasonably dangerous to the consumer is strictly liable in tort for any physical harm caused to ultimate consumers, even in the absence of negligence on his part. Had the Mississippi Court accepted this statement of the entire rule without an express limitation, our task would be an easy one. The Supreme Court's holding, however, leaves in real doubt the extent of the class of sellers other than manufacturers to which the rule of strict liability will attach. Whatever may be the difficulty in determining the degree, whether whole or partial, to which the Mississippi Court adopted § 402A, "our duty is tolerably clear. It is to decide, not avoid, the question." Daily v. Parker, 7 Cir. 1945, 152 F.2d 174, 177, 162 A.L.R. 819. We face then the precise question before the court: Will the Mississippi Supreme Court, when next presented with the question, hold that all sellers engaged in the business of selling a product are strictly liable in tort, or will it restrict its approval of § 402A so as to make the concept of liability without fault applicable only to those sellers having an opportunity to inspect, remedy, or otherwise guard against defects or unsafe conditions in products they place on the market for sale? An affirmative answer to either branch of this question would likely impose liability upon Jordan, the resident defendant.

Since *State Stove*, the Mississippi Supreme Court has not, to our knowledge, clarified its position with regard to the question just posed. It is notable, however, that the decision, so far as it went, represented a substantial departure from the previous attitude of the Court. Particularly noteworthy is the point that even though evidence specifically showed the sellers-contractors to be negligent, the Court nevertheless imposed strict liability in tort upon them. There was excellent opportunity then, by virtue of its specific finding of negligence, for the State Supreme Court to restrict strict liability without fault to manufacturers, but this limitation was rejected in all deliberateness. This presages that Mississippi may very well move forward, at the next opportunity not limited by special facts, to declare in favor of strict liability as to all classes of sellers engaged in the business of selling a line of products.[2] Should the rule not be so boldly applied, and exception made as to sellers who sell in packaged form and without opportunity to inspect or examine a product manufactured by another, still respectable authority exists for imposing strict liability upon retail dealers of motor vehicles and for treating them in the same class as manufacturers. Mississippi, if it extends strict liability in tort to retail sellers of new

---

1. The section provides:

   "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

   "(a) the seller is engaged in the business of selling such a product, and

   "(b) it is expected to reach the user or consumer in the condition in which it is sold.

   "(2) The rule stated in subsection (1) applies although

   "(a) the seller has exercised all possible care in the preparation and sale of his product, and

   "(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

2. A more conservative approach in State Stove Manufacturing Co. v. Hodges would have expanded the warranty concept, freed from privity of contract requirement, to establish liability of both manufacturer and seller, but this was consciously rejected by the Court. See Note, Torts—Strict Liability of a Manufacturer to a Consumer (March, 1967) 38 Miss. Law Journal 341.

motor vehicles, would align itself with a view finding increasing acceptance in the courts. It has been held in Illinois and California, for example, that retail dealers of motor vehicles are strictly liable in tort for personal injuries caused by defects in vehicles sold by them. Suvada v. White Motor Company, 32 Ill. 2d 612, 210 N.E.2d 182 (1965); Haley v. Merit Chevrolet, Inc., 67 Ill.App.2d 19, 214 N.E.2d 347 (1966); Vandermark v. Ford Motor Company, 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964). See also the annotation in 13 A.L.R.3d 1057 § 10D, p. 1099, which discusses this doctrine as applicable to retailers, and makes mention of the *State Stove* case. In other jurisdictions, such as New Jersey, [Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 16 A.2d 69, 75 A.L.R.2d 1 (1960)] liability upon the retail dealer of a new motor vehicle having unsafe conditions as manufactured by another has been imposed for the same policy reasons underlying strict liability without fault, but in language couched in terms of warranty. Both the *Vandermark* and *Henningsen* cases were cited in *State Stove* as illustrative of the developing trend. In the context of the foregoing authorities, the allegations of duty to inspect the pickup truck which was sold to one who was known to have no reason to inspect become pertinent in determining the status of Jordan as one subject to strict liability in tort. This court cannot say, as a matter of law, that the absence of a collapsible or telescoping steering assembly—the design deficiency complained of—was a latent condition beyond the competence of an ordinary motor vehicle dealer to determine and remedy, or otherwise give adequate warning to his customer. These considerations appear to have a high degree of relevance in weighing the status of Jordan's liability, and jurisdiction at this juncture is

not dependent upon an ultimate resolution of factual issues in his favor. Suffice it to conclude that Jordan's non-liability is not settled or manifestly clear under the present state of the Mississippi jurisprudence. In our view, the issues arising from the expanding, yet unsettled, state of the applicable law in Mississippi, due in part to the absence of further and more definitive pronouncements by the highest court of the State, are to be tried in the state court having original jurisdiction and not to be determined in a removal proceeding. This is the guide handed to us by the Fifth Circuit Court of Appeals in Parks v. New York Times Company, 5 Cir., 1962, 308 F.2d 474, certiorari denied, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969. "Though for lack of an exact precedent there may be doubt whether [Jordan] is legally liable, that would not render his joinder fraudulent." Dudley v. Community Public Service Company, 5 Cir. 1939, 108 F.2d 119. So long as there is a possibility that the plaintiffs have stated a cause of action against Jordan, his joinder cannot be deemed fraudulent. 1A Moore's Federal Practice, ¶ 0.161[2] p. 532, citing authorities in Footnote 5.

## II

As an alternative ground of removal, General Motors urges that plaintiffs' claims against it constitute "separate and independent claims" within the meaning of 28 U.S.C. § 1441(c).[3]

Again, our search must begin with the applicable state law. Bentley v. Halliburton Oil Well Cementing Co., (5 Cir. Tex.1949), 174 F.2d 788. The liability of both defendants is predicated upon factual allegations that they are liable under Mississippi law for having placed upon the market an unsafe product which has caused damage to its user. If defendants may be sued jointly or separate-

---

**3.** Subsection (c) provides as follows:

"(c) Whenever a *separate and independent claim or cause of action*, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction." **(Emphasis added)**

ly, the plaintiff having the right to sue one or all of them, the fact that he has elected to join all defendants in the action solely to confine the suit to the state court is wholly immaterial.

■■ It has been widely held that there can be no separate and independent cause of action or claim where, under the law of the state, the plaintiff had the right to sue joint tort-feasors either jointly or separately; see e. g., Bentley v. Halliburton Oil Well Cementing Co., supra; Annot. 19 A.L.R.3d 749 § 3, p. 754. It has long been settled in Mississippi that when concurrent negligence on the part of several defendants produces an indivisible injury, all tort-feasors are liable, even in the absence of a community of design. Mississippi Cent. R. Co. v. Roberts, 173 Miss. 487, 160 So. 604, appeal dism., 296 U.S. 536, 56 S.Ct. 107, 80 L.Ed. 381; Gallo v. Crocker (5 Cir.Miss. 1963), 321 F.2d 876.

Persuasive authority on this treatment of § 1441(c) is Butler Manufacturing Company v. Wallace & Tiernan Sales Corporation, (W.D.Mo.1949), 82 F.Supp. 635. That case, involving the substantive law of Missouri, is apposite here because it is the rule in that state, as in Mississippi, that an injured party is given a cause of action against all joint, or joint and several, tort-feasors, and may sue and obtain judgment against each of them jointly or severally in one or more actions. In the Butler case, we find the following rule to be correct and applicable to the case at bar (p. 638):

"In a state which authorizes the recovery of damages for a single injury which is the proximate result of separate and independent acts of negligence, of two or more parties, and subjects the tort-feasors, even in the absence of community of design or concert of action, to a liability which is both joint or joint and several, as does the laws of the State of Missouri, no right of removal can possibly exist in such actions. * * * Under such law, if the theory of plaintiff's complaint is that there is a community of wrongdoing which caused the injury or damage, and, excepting cases in which it can be said that the plaintiff has fraudulently or wrongfully joined a defendant in order to defeat removal, then there is only one claim or cause of action evinced."

Compare the similar holding in Harward v. General Motors Corporation (E.D.N.C. 1950), 89 F.Supp. 170, construing North Carolina substantive law on joint tort-feasors (manufacturer and retailer of defective automobile) as affected by § 1441(c).

General Motors vigorously asserts, however, that the meaning of § 1441(c) is placed in "proper focus" by Climax Chemical Company v. C. F. Braun and Company, 370 F.2d 616, cert. den., 386 U.S. 981, 87 S.Ct. 1287, 18 L.Ed.2d 231. The factual dissimilarity, however, between that case and the instant one illustrates graphically the incorrectness of its position.

Plaintiff Climax had engaged defendant C. F. Braun & Company as general contractor for the construction of a salt cake and muriatic acid plant. The other defendants in that case had each separately contracted to construct and/or design various components of the plant. Braun, however, guaranteed the overall design, engineering and construction operation of the plant. When construction was completed, Climax brought suit against Braun and all the subcontractors because it found the plant to be "totally inoperable". It alleged that two of the subcontractors were jointly and severally liable with Braun for the defective reactor portion of the plant; another of the defendants was said to be jointly and severally liable with Braun for the defective conveyor system. In short, each of the subcontractors was claimed to be jointly and severally liable with Braun for the defective condition of his own particular part of the overall plant, and the liability of each subcontractor was predicated upon contracts separate and independent from each other as well as

from the contract under which Braun operated. Upon petition of one of the subcontractors, removal to federal court was permitted and the correctness of the order denying remand was upheld on appeal. Viewed, however, in the light of the leading case on the operation of § 1441(c), American Fire & Cas. Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702, the *Climax* case is clearly distinguishable, on its face, from the case at bar. To illustrate, we note that 370 F.2d at 618 of the *Climax* opinion, it is stated that "with the exception of Braun, no defendant assumed responsibility for other than its own unit, or was liable in any way for the failure of the others". Thus, the only relation between the Climax defendants was that they all worked on the same plant site, and none of them other than Braun was responsible for any portion of the plant except the particular project for which he had contracted. The facts presented a unique, distinctly divisible situation. In the instant cases, both declarations assert only "a single cause of action and that is the injury done the plaintiffs by the several acts or omissions of both defendants". Edwards v. E. I. Du Pont De Nemours & Co., (5 Cir. 1950), 183 F.2d 165. Although plaintiffs may allege against defendants a series of acts or omissions amounting to concurring negligence, they combine to produce only one wrong. As was said in the *Edwards* case, on analogous principle before the Court of Appeals:

> "The issues are whether there was injury for which the appellees are responsible, and, if so, what are the measure and amount of damages. Questions of remote and proximate cause, as well as individual liability for separate acts of negligence, may arise upon the trial, but these issues go to the merits of the case and do not affect the removal jurisdiction of the federal court."

■ It is clear that the words "separate and independent claim or cause of action" are more restrictive than the earlier language, 28 U.S.C. § 71, authorizing removal of a "separable controversy". By this revision, Congress manifested an intent to abridge the right of removal. American Fire and Cas. Co. v. Finn, supra. It is now necessary that the claim against the non-resident be both separate *and independent* from that alleged against the resident defendant. "The addition of the word 'independent' gives emphasis to congressional intention to require more complete disassociation between the federally cognizable proceedings and those cognizable only in state courts before allowing removal. * * * We are not unmindful that the phrase 'cause of action' has many meanings. To accomplish its purpose of limiting and simplifying removal, Congress used the phrase 'cause of action' in an accepted meaning to obtain that result. * * * (p. 12, 71 S.Ct. p. 539). Considering the previous history of 'separable controversy,' the broad meaning of 'cause of action,' and the congressional purpose in the revision resulting in 28 U.S.C. § 1441(c), we conclude that where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." (pp. 13–14, 71 S.Ct. p. 540). American Fire and Cas. Co. v. Finn, supra.

Tested by this controlling standard, the cause of action alleged against General Motors is neither separate from nor independent of the cause of action stated against Jordan.

Orders remanding both cases to the state court shall be entered.