B., INC., Plaintiff-Appellant,

v.

MILLER BREWING COMPANY, et al.,
Defendants-Appellees.

No. 80–1871.

United States Court of Appeals,
Fifth Circuit.*
Unit A

Dec. 10, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Seay, Gwinn, Crawford, Mebus & Blakeney, Durwood D. Crawford, Steven E. Clark, Dallas, Tex., for plaintiff-appellant.

Shank, Irwin, Conant, Williamson & Grevelle, Cecil W. Casterline, Dallas, Tex., for defendant-appellee.

Before BROWN, GOLDBERG, AINSWORTH, Circuit Judges.

GOLDBERG, Circuit Judge:

In this case we are confronted with a question of forum rather than substance. We are called upon to review the standards and procedures which are to be applied where it has been alleged that the plaintiff in a civil action has "fraudulently joined" a defendant for the sole purpose of defeating the federal court's diversity jurisdiction.

This is hardly a matter of first impression. Nevertheless, we shall take this opportunity to reaffirm what the cases already hold: district courts must not "pretry" substantive factual issues in order to answer the discrete threshold question of whether the joinder of an in-state defendant is fraudulent.

## I. PROCEDURAL HISTORY

This action arises from the allegedly wrongful termination of a distributorship agreement between "B, Inc.," a Texas corporation, and the Miller Brewing Company, a Wisconsin corporation [hereinafter, "Miller of Wisconsin"].

The plaintiff, "B, Inc.," brought suit against Miller of Wisconsin in a Texas state court, seeking damages and injunctive relief for an array of state law claims.[1] Mr. Gordon Hall, a Texas employee of Miller of Wisconsin, was named as a codefendant in the state court petition along with Mr. Thomas White, Mr. Barry Andrews, and their corporation, "Miller Distributing of Dallas, Inc.," [hereinafter, "Miller of Dallas"].[2] There is no dispute as to the fact that the plaintiff ("B, Inc.") and defendants Hall, White, Andrews, and "Miller of Dallas" are each Texas residents; and that defendant Miller Brewing Company is a Wisconsin resident.

Upon the institution of state court proceedings, Miller of Wisconsin sought to remove this case to the U. S. District Court for the Northern District of Texas (W. M. Taylor, D. J.). Conceding that the Texas plaintiff had named several Texas residents as codefendants in their state court action, and that such joinder would ordinarily act as a bar to federal diversity jurisdiction,[3] Miller of Wisconsin alleged that the Texas defendants had been fraudulently joined for the sole purpose of defeating the federal court's subject matter jurisdiction. In response to the removal petition, the plaintiff moved that the case be remanded to the state court, arguing that the Texas defendants had not been fraudulently joined and that claims against both the out-of-state and in-state defendants had actual bases in fact.

Faced with the defendant's allegations of fraudulent joinder and the plaintiff's fervent denials, Judge Taylor resolved to hold an evidentiary hearing. Over the course of several days, the trial court heard oral testimony and deposition excerpts bearing on the substantive basis for the plaintiff's action against the four Texas defendants. At the conclusion of this arduous proceeding, Judge Taylor was moved to comment that having "spent about three days in this case . . . I virtually feel like we've tried it."

Having considered all of the evidence brought before the court during the lengthy hearing, and having "virtually tried the case," the district court was of the opinion that the Texas defendants had indeed been fraudulently joined for the purpose of defeating the federal court's subject matter jurisdiction. Accordingly, the trial court proceeded to enter an order dismissing each of the Texas defendants from the action,[4] denying the plaintiff's motion for remand to the state court, and stating that "B, Inc.'s" action against Miller of Wisconsin would proceed in federal court. It is from this judgment and order that the plaintiff now appeals.

## II. APPELLATE JURISDICTION

An appellate court must be certain that it is empowered to review the actions of the court below before proceeding to the substance of an appeal. *Stewart v. Kutner*, 656 F.2d 1107 (5th Cir. 1981). In deference to this principle, we must establish that the case before us is ripe for review before we proceed to opine.

1. The original complaint included allegations of breach of contract, civil conspiracy, and tortious interference with existing and prospective business relationships. The substance of the plaintiff's claims is set out more fully in Section IV, *infra*.

2. Together, White and Andrews were said to control "Miller Distributing of Dallas, Inc.," a corporation which allegedly usurped the plaintiff's rights to a regional beer distributorship.

3. 28 U.S.C.A. § 1441(b) provides for the district court's removal jurisdiction. This code section clearly states that "diversity" actions are removable ". . . only if none of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought."

4. Final judgments were entered in favor of the four Texas defendants: Hall, White, Andrews, and "Miller of Dallas."

It is well settled that "[t]he existence of appellate jurisdiction in a specific federal court over a given type of case is dependent upon authority expressly conferred by statute." *Carroll v. United States*, 354 U.S. 394, 399, 77 S.Ct. 1332, 1336, 1 L.Ed.2d 1442 (1957). The primary grant of jurisdiction to the Courts of Appeals is found at 28 U.S.C. § 1291, which gives this Court jurisdiction to review "... *final decisions* of the district courts." (Emphasis added). *See,* 15 Wright, Miller & Cooper, *Federal Practice and Procedure,* Jurisdiction § 3905.

 Ordinarily, a district court's refusal to remand an action is not in and of itself a final order and cannot be reviewed unless and until a final judgment has been entered. *Poirrier v. Nicklos Drilling Co.,* 648 F.2d 1063 (5th Cir. 1981); *City of Naples v. Prepakt Concrete Co.,* 494 F.2d 511 (5th Cir. 1974), *cert. den.,* 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974); *Lewis v. E. I. Dupont DeNemours & Co.,* 183 F.2d 29 (5th Cir. 1950); *Arthur v. Edmunds,* 66 F.2d 21 (5th Cir. 1933); *Dixon v. Georgia Indigent Legal Services Inc.,* 388 F.Supp. 1156 (S.D.Ga. 1974), aff'd without op, 532 F.2d 1373 (5th Cir. 1975).[5] In this case however, the trial court did more than merely rule upon the plaintiff's motion for remand. The court actually proceeded to enter judgment in favor of the four Texas defendants; judgments which the trial court *expressly characterized* as being final and appealable for the purposes of Rule 54(b) of the Federal Rules of Civil Procedure.[6] Because final judgments have been entered with respect to the four Texas defendants, and because

the plaintiff now appeals from one of these final orders,[7] we find that this case is properly before us.

### III. "MY PLACE OR YOURS?": CHOOSING A FORUM FOR THE MAIN EVENT

In this case, the district court was confronted with a single threshold question: did it have jurisdiction to hear this matter on its merits? We believe that the focus of our inquiry should be this very question of jurisdiction. "[O]ur sole concern is: Who tries the case? State or Federal Court?" *Bobby Jones Garden Apartments, Inc. v. Suleski,* 391 F.2d 172, 175 (5th Cir. 1975).

 In treating this issue, we would do well to recall certain jurisdictional fundamentals. It is axiomatic that the jurisdiction of the federal courts is limited, with its scope defined by the Constitution and by statute. *American Fire & Casualty v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951); *In Re Carter,* 618 F.2d 1093, 1098 (5th Cir. 1980), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981); *see also, Maxwell v. First National Bank of Monroeville,* 638 F.2d 32 (5th Cir. 1981). Where a federal court proceeds in a matter without first establishing that the dispute is within the province of controversies assigned to it by the Constitution and statute, the federal tribunal poaches upon the territory of a coordinate judicial system, and its decisions, opinions, and orders are of no effect. *American Fire & Casualty v. Finn, supra; In Re Carter, supra.* Thus, the trial court

---

5. Similarly, an order to remand an action is ordinarily not reviewable by the Court of Appeals. The general rule is set forth by 28 U.S.C. § 1447(d), which states that "an order remanding a case to the state court ... is not reviewable on appeal or otherwise," *Self v. Self,* 614 F.2d 1026 (5th Cir. 1980); *In re Weaver,* 610 F.2d 335 (5th Cir. 1980), *reh den.,* 615 F.2d 919 (5th Cir. 1980); *Live and Let Live v. Carlsberg Mobile Home Properties,* 592 F.2d 846 (5th Cir. 1979).

6. In another "fraudulent joinder" case, *Bobby Jones Garden Apartments, Inc. v. Suleski,* 391 F.2d 172, 175 (5th Cir. 1975), a Florida plaintiff brought suit against an out-of-state corporation and its Florida agent in a Florida state court.

The out-of-state defendant removed the action to federal court, and on a pre-trial motion the claims against its Florida agent were dismissed. This court (Brown, C. J.) held, *inter alia,* that the dismissal of the claims against the Florida defendant constituted a "final" order for appeal. In finding that we would reach the merits of that appeal, this Court noted that the trial court had certified the judgment in favor of the non-diverse defendant as "final" pursuant to F.R.Civ.P. 54(b). *Bobby Jones, supra,* n.3.

7. Plaintiff is appealing from the entry of judgment in favor of Gordon Hall, the sole remaining Texas defendant.

must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.

Because the establishment of a basis for the exercise of subject matter jurisdiction is the *sine qua non* of federal litigation, we have consistently held that it is the party who urges jurisdiction upon the court who must always bear the burden of demonstrating that the case is one which is properly before the federal tribunal. *Village Fair Shopping Co. v. Sam Broadhead Trust*, 588 F.2d 431 (5th Cir. 1978); *Ray v. Bird & Son & Asset Realization Co., Inc.*, 519 F.2d 1081 (5th Cir. 1975). Applying this well established principle to matters similar to the case at bar, we find that where an out-of-state defendant removes an action from state to federal court, the burden is upon the removing party to plead a basis for federal jurisdiction. *R. G. Barry v. Mushroom Makers, Inc.*, 612 F.2d 651 (2nd Cir. 1979); *Lincoln Associates, Inc. v. Great American Mortgage Investors*, 415 F.Supp. 351 (N.D.Tex.1976). Similarly, where there have been allegations of "fraudulent joinder," it is clear that the burden is upon the removing party to prove the alleged "fraud." *Yawn v. Southern Railway Co.*, 591 F.2d 312 (5th Cir. 1979), *cert. denied*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 304 (1979); *Parks v. New York Times Company*, 308 F.2d 474, 478 (5th Cir. 1962), *cert. denied*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964).

A. *The procedure and standards to be applied where it is alleged that there has been fraudulent joinder*

The burden of persuasion placed upon those who cry "fraudulent joinder" is indeed a heavy one. In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional [8] facts. *Keating v. Shell Chemical Company*, 610 F.2d 328 (5th Cir. 1980); *Tedder v. F.M.C. Corporation, et al.*, 590 F.2d 115 (5th Cir. 1979); *Bobby Jones Garden Apartments v. Suleski*, 391 F.2d 172, 177 (5th Cir. 1968); *Parks v. New York Times Company*, 308 F.2d 474, 478 (5th Cir. 1962), *cert. denied*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964).

In support of their removal petition, the defendants may submit affidavits and deposition transcripts; and in support of their motion for remand, the plaintiff may submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint. The district court must then evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff. *Keating v. Shell Chemical, supra; Tedder v. F.M.C., supra; Bobby Jones Garden Apartments v. Suleski, supra; Parks v. New York Times Company, supra.*[9] Moreover, the district court must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff. *Bobby Jones Garden Apartments v. Suleski, supra; Dudley v. Community Public Service Company*, 108 F.2d 119 (5th Cir. 1939); *Howard v. General Motors Corporation*, 287 F.Supp. 646 (N.D.Miss.1968).[10]

---

8. There have been no allegations of fraud in the plaintiff's pleading of *jurisdictional* facts. All parties concede that the plaintiff and four of the named defendants are Texas residents. Therefore, in order to defeat the plaintiff's motion for remand, the defendants in this case must show that the plaintiff could not establish a cause of action against any one of the named Texas defendants as a matter of law. *See* note 14, *infra.*

9. Thus, the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P., Rule 56(b). *See, e. g., Keating v. Shell Chemical Co., supra* at 333.

10. In *Bobby Jones Garden Apartments v. Suleski, supra,* the Court of Appeals noted that Florida state law was unsettled but that any uncertainties would be resolved in favor of the plaintiff. In *Dudley v. Community Public Service Company*, 108 F.2d 119 (5th Cir. 1939) our institutional forebearers put the issue quite succinctly: "Though for lack of an exact prece-

If, having assumed all of the facts set forth by the plaintiff to be true and having resolved all uncertainties as to state substantive law against the defendants, the district court should find that there is no possibility of a valid cause of action being set forth against the in-state defendant(s), only then can it be said that there has been a "fraudulent joinder." *Tedder v. F.M.C., supra; Keating v. Shell Chemical Company, supra* at 332. However, if there is even a possibility that a state court would find a cause of action stated against any one of the named in-state defendants on the facts alleged by the plaintiff, then the federal court must find that the in-state defendant(s) have been properly joined, that there is incomplete diversity, and that the case must be remanded to the state courts. *Parks v. New York Times Company, supra; Bobby Jones Garden Apartments v. Suleski, supra; Keating v. Shell Chemical Company, supra* at 333.

We believe that jurisdictional inquiry must not subsume substantive determination. This strict standard has been consistently applied by the Fifth Circuit in cases discussing fraudulent joinder. In *Parks v. New York Times Company*, 308 F.2d 474, 478 (5th Cir. 1962), *cert. denied*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964), this Court stated "there can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged." Similarly, in *Bobby Jones Garden Apartments v. Suleski*, 391 F.2d 172, 177 (5th Cir. 1968) this Court (Brown, C. J.) found that

> where there have been allegations of fraudulent joinder ... the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham ... and is not fraudulent in fact or in law.[11]

In two recent cases, we have continued to apply the strict standard set forth in *Parks v. New York Times Company, supra* and *Bobby Jones, supra*. In *Tedder v. F.M.C. Corporation, et al.*, 590 F.2d 115 (5th Cir. 1979) this Court affirmed a finding of fraudulent joinder, but did so only after having determined that *as a matter of law* there was no reasonable basis for predicting that the plaintiff might establish liability against a named in-state defendant.[12] Last year, in *Keating v. Shell Chemical Company*, 610 F.2d 328 (5th Cir. 1980) this Court discussed the issue of fraudulent joinder and once again applied the rule adopted in *Parks, supra*, and *Bobby Jones, supra*. In *Keating* we held, *inter alia*, that if there remained a possibility of a valid claim being stated against the in-state defendant, the case would be one properly cognizable only in the state courts.[13]

---

dent there may be doubt whether the [in-state defendant] is legally liable, that would not render his joinder fraudulent." *See also, Howard v. General Motors Corporation*, 287 F.Supp. 646 (N.D.Miss.1968).

11. In *Bobby Jones, supra*, an out-of-state corporate defendant sought to remove an action from the Florida state courts. Although the plaintiff had joined the corporation's in-state agent as a codefendant, the corporate defendant argued on appeal that the joinder was fraudulent. Finding that as a matter of state law liability was at best uncertain, this Court nevertheless held that since the possibility of liability did exist, the case was cognizable only in the state courts.

12. In *Tedder*, this Court applied the rule set forth in *Parks* and *Bobby Jones*, stating that "in accepting as true every fact alleged in Tedder's state court petition, there is ... no reasonable

basis for predicting that [the plaintiff] could prevail under Louisiana law as it exists today." *Tedder* at 117.

13. In *Keating, supra*, a Louisiana plaintiff brought suit in Louisiana state court against an out-of-state corporation and its in-state agents. The plaintiff, an employee of the corporate defendant, sought damages for a personal injury allegedly caused by the corporation's in-state agents. Upon the institution of state court proceedings, the out-of-state defendant sought to remove the action to federal court, alleging that its in-state agents had been fraudulently joined. In support of its allegations of fraudulent joinder, the out-of-state defendant invoked a Louisiana statute which provided employers and their agents with an immunity from negligent tort liability and argued that as a matter of law no recovery was possible against the in-state agent. In response, the plaintiff argued

 We believe that a clear principle has been established by each of these cases: where the removing party grounds its allegations of "fraudulent joinder" upon a theory that the plaintiff cannot recover from the in-state defendant as a matter of law, the trial court should resolve all disputed questions of fact in favor of the plaintiff and then determine whether there could possibly be a valid cause of action set forth under state law. There should be no need for an evidentiary hearing.[14]

In this case, the trial court conducted a lengthy evidentiary hearing with oral testimony, direct and cross examination, and the introduction of deposition transcripts and documents by both the plaintiff and the defendants. The proceeding stretched over the course of four days and presented a detailed exploration of the substantive factual issues in the case. In light of the standard set forth in our precedents, this proceeding was unnecessary.[15] A district court need not and should not conduct a full scale evidentiary hearing on questions of fact affecting the ultimate issues of substantive liability in a case in order to make a preliminary determination as to the existence of subject matter jurisdiction. The question of whether the plaintiff has set forth a valid claim against the in-state defendant(s) should be capable of summary determination.

## IV. THE CLAIMS AGAINST THE TEXAS DEFENDANTS

In light of the standard we have set forth above, we must now determine whether— upon the facts alleged by this plaintiff— there is a possibility that a Texas state court might find that a valid claim had been stated against any one of the four named Texas codefendants.[16]

that the in-state defendant who had allegedly caused the plaintiff's injuries had not been acting within the scope of his employment when the accident occurred, and that he (the in-state agent) was not cloaked by the statutory immunity.

In an effort to resolve the fraudulent joinder issue, the Court of Appeals used as its guide the standard set forth in *Parks* and *Bobby Jones.* The panel stated:

"... it is not clear to us 'beyond doubt that the plaintiff can prove no set of facts in support of his claim' (cite omitted) ... it is possible that [the plaintiff] may be able to prove that [the in-state defendant] was not [acting] within the ... scope of his employment, in which case ... there could be a colorable claim against the [in-state defendant] under Louisiana law." *Keating, supra* at 333.

14. Though in this case there was no need for an evidentiary hearing, we do not mean to suggest that an evidentiary hearing is never required in adjudicating allegations of fraudulent joinder. Where the removing party contends that the plaintiff's pleadings contain misrepresentations of *jurisdictional* fact, an evidentiary hearing would indeed be appropriate. Thus, where the removing party alleges that the named in-state defendant does not even exist [*Hughes Construction Company, Inc. v. Rheem Manufacturing Co.*, 487 F.Supp. 345 (N.D.Miss.,1980)]; or that there is a contested question of fact regarding the true domicile of the parties [*Ray v. Bird & Son & Asset Realization Co., Inc.*, 519 F.2d 1081 (5th Cir. 1975)] the trial court may hold an evidentiary hearing to resolve these limited questions of jurisdictional fact. However, where the disputed factual issues relate to matters of substance rather than jurisdiction, e. g. did the tort occur? was there a privilege? was there a contract? etc., all doubts are to be resolved in favor of the plaintiff.

15. To the extent that this proceeding forced the plaintiffs into what was in essence a trial on the merits without notice or time for adequate preparation, the entry of judgment at the conclusion of the hearing seems not only unnecessary, but also fundamentally unfair. A trial judge must give the parties "some form of notice that their final day in court has come." *Hollis v. Itawamba County Loans,* 657 F.2d 746 (5th Cir. 1981).

16. Texas defendants White, Andrews, and "Miller of Dallas" were dropped from this action by virtue of a settlement agreement entered into after the District Court proceedings but prior to this appeal. The appellees have suggested that because White, Andrews, and "Miller of Dallas" are no longer parties to this action, this court cannot review the question of whether these in-state defendants were fraudulently joined in the original action. We do not agree.

The final judgment entered in favor of defendant Hall can only be valid if the District Court had subject matter jurisdiction over the action to which he was a party; and the District Court could only have had subject matter jurisdiction if it was correct in its holding that each and every one of the four Texas codefendants had been fraudulently joined. Thus, if it

## A. *The plaintiff's allegations*

In their state court petition, "B, Inc." set forth claims against four Texas codefendants seeking damages and injunctive relief for an array of "business torts." The facts which give rise to these claims are as follows: [17]

From 1975 to 1980, "B, Inc." was the independently owned and operated Dallas, Texas distributor for Miller of Wisconsin's products.[18] So as to "keep tabs" on its local distributor, Miller of Wisconsin employed a regional manager who was responsible for evaluating "B, Inc.'s" performance. Starting in 1978, Texas defendant Hall was Miller of Wisconsin's regional manager for the Dallas-Fort Worth area.

Upon reviewing the record in this case, the Court is confronted with sharply contrasting presentations of Mr. Hall's role as regional manager. All parties agree that Gordon Hall's position required him to evaluate "B, Inc.'s" performance as an independent distributor, and that Hall's reports and evaluations would play a significant role in Miller of Wisconsin's decision to either renew or terminate the distributorship agreement in 1980. However, the parties agree on little else.

The plaintiff alleges that in 1979, defendant Hall and "B, Inc." discussed the possibility of Hall leaving Miller of Wisconsin and taking a position as general manager for "B, Inc." According to the plaintiff, when "B, Inc." refused to hire Hall or give him equity in the distributorship, Hall threatened to use his position to retaliate against "B, Inc." Also, it is alleged that Hall carried out his threats by intentionally downgrading his evaluations of "B, Inc." in spite of the fact that those under his immediate supervision had told him that it would be difficult to rate the distributorship's performance as other than satisfactory.

The plaintiff claims that its distributorship agreement was not renewed in 1980 as a result of Hall's personal malicious efforts to downgrade his evaluation of "B, Inc.'s" performance. The plaintiff further alleges that in early 1980, defendant Hall was called upon by his supervisors at Miller of Wisconsin, was told that the "B, Inc.'s" distributorship agreement would most likely not be renewed, and was asked to suggest possible candidates for the Dallas distributorship. Hall allegedly suggested codefendants White and Andrews as likely prospects. Moreover, Hall is said to have "tipped-off" White and Andrews about the

---

can be determined that *any one* of those instate defendants was properly joined in the original action, then it must be found that there was incomplete diversity at the time of removal and that the District Court lacked subject matter jurisdiction over the action at the time it purported to enter judgment for defendant Hall. If we should determine that the District Court was in error with respect to its finding of fraud in the joinder of any one of the four Texas codefendants, then it will necessarily follow that the judgment entered in favor of defendant Hall must be vacated.

Therefore, while we will not review the *judgments* entered in favor of White, Andrews, or "Miller of Dallas," we may examine the question of their allegedly fraudulent joinder insofar as it affects the validity of the judgment which was entered in favor of Gordon Hall, the Texas defendant who remains a party to this action.

17. Most of the factual allegations set forth here appear in the plaintiff's original state court petition. However, this action was removed before the plaintiffs had an opportunity to amend or supplement their pleadings as provided under Texas Rules of Civil Procedure, Rule

63. Therefore, in addition to facts which were included in the plaintiff's original state court petition, we will consider "facts" which appear in the record of the plaintiff's allegations as presented in the District Court's hearing.

18. Regional distributorships were granted for a period of five years. "B, Inc." was given the Dallas territory in 1975 with the agreement to remain in force through 1980. Miller's regional managers were charged with the responsibility of evaluating the performance of the independent distributors with respect to a variety of detailed criteria. If the independent distributor's performance was found to be unsatisfactory by Miller's regional manager, the distributorship agreement could either be terminated prior to 1980 or simply not renewed at the end of the five year term.

The role of regional manager could potentially be abused. Hall's immediate predecessor in the job had been relieved of his position because he had allegedly been receiving cash and gifts from "B, Inc." in exchange for favorable evaluations.

availability of the Dallas distributorship and to have provided them with what amounted to an inside track in the race to secure the rights to the Dallas distributorship. The plaintiff also alleges that Hall conspired with White, Andrews, and Miller of Wisconsin to sabotage "B, Inc.'s" efforts to sell their distributorship to parties who had expressed an interest in purchasing "B, Inc." as a going concern.

In sum, the plaintiff claims that Hall, acting in his individual capacity and in concert with defendants Miller of Wisconsin, Miller of Dallas, White, and Andrews, acted to tortiously interfere with "B, Inc.'s" then existing business relationship with Miller of Wisconsin; with its prospective business relationship with Miller of Wisconsin; and with the prospective sale of "B, Inc.'s" assets to potential purchasers.[19]

B. *Texas substantive law*

Having set forth the facts as alleged by the plaintiff, we now consider the question of whether a Texas court might find that a valid claim had been stated against any one of the in-state defendants.

The Texas courts recognize a cause of action for tortious interference with existing and/or prospective contractual rights. *Sabine Products v. Frost National Bank,* 596 S.W.2d 271 (Tex.Civ.App.1980), *Clements v. Withers,* 437 S.W.2d 818, 821–22 (Tex.1969); *Boyles v. Thompson,* 585 S.W.2d 821, 831–35 (Tex.Civ.App., 2nd Dist., 1979), *South Central Livestock, Etc., v. Security State Bank of Hedley, Texas,* 551 F.2d 1346, 1351 (5th Cir. 1977); *Leonard Duckworth, Inc. v. Michael T. Field & Co.,* 516 F.2d 952, 955–6 (5th Cir. 1975), 33 Tex. Jur.2d *Interference* § 1. Additionally, the Texas courts recognize a cause of action for interference with business relations where

there is no enforceable contract, but where a business relationship has existed for some period of time. *Martin v. Phillips Petroleum Co.,* 455 S.W.2d 429, 435 (Tex.Civ.App., 14th Dist., 1970); 33 Tex.Jur.2d *Interference* § 8.

As a limit upon these causes of action, the Texas courts have · held that where an agent induces his principal to breach a valid contract with a third party, and the agent is found to have acted *qua* agent and not in furtherance of any personal objectives, the agent's actions are privileged. *Maxey v. Citizens National Bank of Lubbock,* 507 S.W.2d 722 (Tex.1974); *Russell v. Edgewood Independent School District,* 406 S.W.2d 249 (Tex.Civ.App. San Antonio, 1966); *Southwestern States Oil & Gas Co. v. Sovereign Resources,* 365 S.W.2d 417 (Tex.Civ.App. Dallas 1963). However, where the agent is acting beyond his authority and in *furtherance of personal objectives,* the agent's actions in inducing his principal to breach a contract are *not* privileged. *Maxey v. Citizens National Bank, supra* at 726; *cf. Kelly v. Galveston County,* 520 S.W.2d 507, 512 (Tex.Civ.App. 14th Dist., 1975). Thus, where it has been alleged that the agent has been acting in furtherance of personal objectives, the existence of the agent's privilege turns upon a disputed question of substantive fact. If during a trial on the merits it can be established that the agent was motivated by *personal* animus or greed, then under Texas law, the agent can indeed be held liable for inducing his principal to breach a contract or commit a business tort.[20]

In this case, the plaintiff alleged that defendant Hall, acting beyond his authority and in furtherance of personal objectives, induced Miller of Wisconsin to breach an agreement with "B, Inc."; to not enter into

---

**19.** In providing this rather detailed recitation of the plaintiff's allegations, we do not mean to suggest that we give these charges against Texas defendants Hall, White and Andrews any particular credence. We present these "facts" only because we must take all the plaintiff's substantive allegations to be true in passing upon the question of whether a state court might find a valid claim had been stated.

**20.** In *Kelly v. Galveston County,* 520 S.W.2d 507 (Tex.Civ.App., 14th Dist., 1975) it was held · to be error for a trial court to summarily dismiss an action for tortious interference where it had been alleged that the defendant-agent was acting beyond the scope of his authority in furtherance of personal objectives.

a new distributorship agreement with "B, Inc.", and to interfere with "B, Inc.'s" efforts to sell its assets.

█ Having considered all of the evidence brought forth in the four day evidentiary hearing, the district court was of the opinion that the plaintiff failed to establish that defendant Hall had acted in any way other than as an agent for Miller of Wisconsin. In so finding, the district court appears to have resolved a disputed question of substantive fact in favor of the defendants rather than the plaintiff. This was error, for as we have stressed, all disputed questions of substantive fact should have been resolved in favor of the plaintiff.

Taking the plaintiff's allegations in this case to be true, we cannot predict with absolute certainty that a Texas court would summarily dismiss the causes of action asserted against defendant Hall.

In addition to the claims against defendant Hall, the plaintiff also alleges that Texas defendants White and Andrews conspired with defendant Hall to usurp "B, Inc.'s" rights to the Dallas distributorship. The Texas courts recognize a cause of action for civil conspiracy. *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925 (Tex.1979); 12 Tex.Jur.2d *Conspiracy* § 17 at 339 (1960). If White and Andrews could be shown to have conspired with Hall and/or Miller of Wisconsin, they too might have incurred liability.[21]

Thus, upon examination of the allegations set forth by the plaintiff, we find that the District Court was in error when it determined that there was no possibility that a state court might find a valid claim asserted against at least one of the named in-state defendants. Given the plaintiff's allegations and the current state of Texas substantive tort law, we find that the joinder of one or more of the in-state defendants was not fraudulent.

## V. WE REMIND AND REMAND

When confronted with allegations of fraudulent joinder, the trial court's vision must be synoptic rather than microscopic. The court must take care not to focus solely upon the factual minutiae of the individual case and thereby lose sight of the important questions of federal jurisdiction presented when the propriety of removal is contested.

The federal judiciary is now seen in some quarters as an ever growing monolith. It behooves those of us in federal tribunals to be certain of our jurisdictional underpinnings before we embark upon a full scale trial, and we should constantly remind ourselves that we must not trespass upon the judicial "turf" of the state courts. Many commentators have suggested that diversity is a juridical farce, but for now it remains a judicial fact. If there is complete diversity between the adverse parties, the defendant is entitled to a federal forum; *but*, if the plaintiff and even one properly joined defendant are citizens of the same state, the federal court has no business taking jurisdiction over the action.

The "fraudulent joinder" issue must be seen by the trial courts as presenting a discrete threshold question. A trial court should not have to witness an entire epic drama before the necessary prelude has been acted out fully and the critics' verdict rendered. In this case, the trial court should not have held what amounted to a plenary trial on the merits until it had first been established that the court would take jurisdiction over the matter. Only if it could have been shown *as a matter of law* that there was no possibility of there being a valid claim stated against the in-state defendants should the court have denied the plaintiff's motion for remand.

In this case, the question before the District Court was whether "B, Inc." could have had any intention to obtain a joint judgment when it named these Texas residents as codefendants in its original state

21. While defendant Hall might have been cloaked by a privilege which would protect him from liability for actions undertaken in his role as Miller of Wisconsin's agent, (*see, Maxey v.* *Citizens National Bank, supra*) no such privilege would be available to Texas defendants White and Andrews.

court petition. Miller of Wisconsin has argued that the plaintiff's claim here can be for nothing more than a simple breach of contract, a dispute between a Texas plaintiff and a Wisconsin defendant. In their original petition, however, the plaintiff made out claims against an array of Texas defendants alleging that there was a conspiracy to induce a breach of contract and a conspiracy to tortiously interfere with the plaintiff's existing and prospective business relationships.

We do not purport to express an opinion on the merits of these claims asserted against the Texas defendants; nor do we even suggest that a Texas court must find as a matter of law that valid claims have been stated. We merely hold that insofar as *it is possible* that a state court might find that the Texas defendant(s) were subject to liability, the joinder of one or more of the defendants was not fraudulent.

Because we find that one or more of the named in-state codefendants were not fraudulently joined in the original state court action, we must conclude that this case is one which was not properly cognizable in the federal courts.

While we express no opinion as to the merits of their trouble brewing in Dallas, we find that this case of Miller's must come to a head in the state courts. Therefore, the judgment entered in favor of defendant Hall is VACATED and it is ordered that this case be and is hereby REMANDED to the District Court, with instructions that it then be remanded to the 162nd Judicial District Court of Dallas County, Texas.