Leroy A. PESCH, M.D., Plaintiff,

v.

**FIRST CITY BANK OF DALLAS, Republic Health Corporation, and Credit Des Bergues, Defendants.**

**Civ. A. No. CA3–86–1371–D.**

United States District Court,
N.D. Texas,
Dallas Division.

June 23, 1986.

See also 637 F.Supp. 1539.

Tom Bayko & James A. Jones of Holtzman & Urquhart, Houston, Tex., and Michael W. Ford & Jonathan R. Nelson of Chapman & Cutler, Chicago, Ill., for plaintiff.

Stephen S. Maris of Passman & Jones, Dallas, Tex., for First City Bank of Dallas.

Stephen Cormac Carlin of Johnson & Swanson, Dallas, Tex., for Republic Health Corp.

Alan W. Harris of Andrews & Kurth, Dallas, Tex., and Donald F. Luke of Rogers & Wells, New York City, for defendant Credit Des Bergues.

## MEMORANDUM OPINION

FITZWATER, District Judge.

Plaintiff has moved to remand this case to state court. The court must decide whether two of the defendants, who are Texas citizens, are merely nominal or formal parties, or have been fraudulently joined as defendants, so that their presence will not preclude diversity of citizenship and, in turn, this court's subject matter jurisdiction.

Plaintiff, an Illinois citizen, owns the common stock of one of the defendants, a Texas corporation. The second Texas defendant, a national bank, is the corporation's transfer agent. The third defendant, who removed the case, is a citizen of Switzerland. The Swiss defendant has presented to the corporation and its transfer agent 210,000 shares of the corporation's common stock now registered in the name of plaintiff, which the Swiss defendant requests be transferred to and re-registered in its name.

In this suit plaintiff seeks a declaratory judgment that the Swiss corporation is not

entitled to transfer of the 210,000 shares. Against the Texas corporation and its Texas transfer agent plaintiff seeks only injunctive relief restraining the transfer and re-registration of the shares pending determination of his civil action and a final judgment directing the corporation and its transfer agent to surrender the stock powers and shares to the plaintiff.

Because two of the defendants are Texas citizens, 28 U.S.C. § 1441(b)[1] would generally dictate that the action is not removable. However, if the Texas corporation and Texas transfer agent are not "parties in interest," but are merely nominal or formal parties, or are not parties "properly joined," but are parties fraudulently joined, their citizenship in the forum state will not prevent removal. *See Salem Trust Co. v. Manufacturers' Finance Co.*, 264 U.S. 182, 189–90, 44 S.Ct. 266, 267, 68 L.Ed. 628 (1924) (nominal or formal parties) and *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir.1979) (per curiam) (fraudulent joinder). Concluding that the Texas defendants are merely nominal and formal parties to the Illinois plaintiff's action against the Swiss defendant and that they have been fraudulently joined, the court concludes that the state court action was properly removed and denies the motion to remand.[2]

## I.

### BACKGROUND FACTS AND PROCEDURAL HISTORY

Plaintiff, Leroy A. Pesch, M.D. ("Pesch"), is an Illinois physician and an international investor. Defendant, Credit des Bergues S.A. ("CDB"), is a Swiss financial institution located in Geneva, Switzerland. Defendant, Republic Health Corporation ("Republic"), is a Texas corporation. Defendant, First City Bank of Dallas ("First City"), is a national bank domiciled in Texas.

### A. CDB's Factual Contentions[3]

Pesch, individually, and CDB entered into a credit agreement in 1984. In 1985, a Pesch-owned company, Pesch Health Systems S.A. ("PHS"), and CDB entered into a credit agreement. Pesch secured the two lines of credit by pledging to CDB certain of his own property. To secure his personal line of credit he pledged shares of Republic stock. To secure the PHS line of credit he pledged his CDB investment account, a fund deposited with CDB which CDB invested for Pesch. Pesch also cross-collateralized his personal line of credit by pledging the investment account, together with the Republic stock, as security for the personal line of credit. Pesch granted to CDB an option to purchase a portion or all the additional Republic shares that Pesch owned. The number of shares first covered by the option was 175,000 and was later increased to 210,000.

### B. Pesch's Factual Contentions

According to the terms of the stock option Pesch was to deposit the shares with a New York banker for the account of CDB during the option period. The shares were neither pledged to CDB to secure borrow-

---

1. 28 U.S.C. § 1441(b):
   Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

2. The court has decided the matter of its subject matter jurisdiction on an expedited basis so that plaintiff could pursue injunctive relief either in this court or in state court, as appropriate. The court has already issued an order denying plaintiff's motion to remand. The court now issues this memorandum opinion to explain its reasons for denying the motion.

3. The court sets forth the respective factual contentions of CDB and Pesch, as reflected in their pleadings and affidavits opposing and supporting the motion to remand, to give additional factual context to the court's opinion. The court is cognizant, for purposes of evaluating the questions presented, that it must accept as true the allegations contained in plaintiff's state court petition. *See Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir.1983).

ing by Pesch or PHS nor were they cross-collateralized. Instead, other shares, apart from the option shares, were pledged by Pesch as security for his borrowing. The security for the extension of credit to Pesch personally was held separately by CDB at all times.

Pesch's falling out with CDB arose out of CDB's commitment, and subsequent refusal, to finance PHS's acquisition of a health clinic located in Switzerland. Pesch deposited $2 million in his CDB investment account to secure the extension to PHS of the credit necessary to acquire the clinic. In September 1985, PHS and CDB agreed on the major terms of the health clinic financing and CDB, without prior notice, informed PHS that a broker's fee of 610,-000 Swiss francs (approximately $305,000) was owed by PHS to CDB because CDB had introduced Pesch to one of the health clinic's owners. Pesch was surprised at the demand and astonished by the amount. CDB, upon being pressured by the PHS board of directors, withdrew the demand. CDB, however, remained undaunted and, in October 1985, made a second demand for a broker's fee, this time in the lesser sum of 390,000 Swiss francs (approximately $195,-000). Pesch felt the fee was unwarranted but agreed to pay it if the health clinic purchase was consummated and if CDB financed it in accordance with its prior financing agreement with PHS. In December 1985, 6–12 days before the clinic transaction was to close, CDB for the first time demanded audited financial statements of PHS. It was impossible to provide any kind of audit in that time period. Further, the audit was to be "as of the closing date," which is impossible because an accounting cannot be for a future date. Pesch interpreted CDB's new demand to be a form of pressure to force Pesch to pay the $305,000 broker's fee originally demanded by CDB. Pesch nearly lost the clinic purchase and was forced to seek alternative financing from J.P. Morgan (Suisse) S.A. ("Morgan").

Pesch, dissatisfied with CDB, decided to sever all financial ties with CDB and to pay off all outstanding indebtedness to CDB.

Pesch and PHS repaid all debt in December 1985. Pesch instructed CDB to transfer the collateral being held by CDB to his new lender, Morgan. There remained $2 million or so in Pesch's CDB investment account that CDB advised would not be available for withdrawal until January 1986. Pesch agreed with CDB to leave the investment to secure new CDB loans and to secure CDB's interest in the resolution of its claimed fees. At no time did CDB request or suggest that the option shares were to be used to back up any obligations other than the stock option. In December 1985, CDB unilaterally debited Pesch's and PHS's lines of credit for a number of items, including "prepayment fees" totalling approximately $381,000. Pesch never agreed to pay these fees.

CDB exercised the stock option for the Republic shares and wired $2,524,000 to Pesch's New York bank account. CDB claims it deposited the remaining $500,000, which represents the total balance due for the shares, in Pesch's investment account and will not release any part of it until Pesch provides collateral of equal value to secure CDB's debit of prepayment fees. These option shares were never pledged as collateral.

C. Events Preceding the State Lawsuit and Pesch's State Court Pleadings

On March 21, 1986, Pesch informed CDB that CDB should wire the $3,024,000 required to exercise the option to Pesch's New York bank account. On March 27, 1986, CDB wired $2,524,000 of that amount and withheld $500,000. On March 28, 1986, Pesch advised First City that Pesch had reason to believe First City would shortly receive a request to transfer the 210,000 shares of Republic stock. Pesch told First City that the transfer should not be effected because the full purchase price had not been paid. On April 30, 1986, Pesch declared a forfeiture of CDB's rights under the stock option and proffered the $2,524,-000 in exchange for the shares. At about the same time, Republic's attorneys informed Pesch that the shares and stock

powers had been presented to First City for transfer to CDB. Pursuant to TEX. BUS. & COMM.CODE ANN. § 8.403 (Vernon Supp.1986) (the Texas codification of Uniform Commercial Code § 8-403), Republic informed Pesch that the shares would be transferred unless Pesch obtained an injunction against the transfer or posted an indemnity bond.

On May 15, 1986, Pesch filed in Texas state court his original petition for injunctive and declaratory relief and damages naming as defendants CDB, Republic, and First City. The state court petition contains the following allegations pertinent to Republic and First City:

## COUNT I

*Against Republic and [First City], for Temporary Restraining Order*

\* \* \* \* \* \*

20. Pesch is entitled to a permanent injunction against transfer or re-registration of the option shares by [First City] and Republic, and is entitled to a declaratory judgment against all defendants declaring that the option shares belong to Pesch and that the stock option is terminated. Before notice can be served upon CDB and a hearing held on Pesch's application for temporary injunction, [First City] and Republic may act to transfer the option shares to CDB so as to irreparably and irretrievably damage Pesch. A temporary restraining order is immediately needed because CDB has already initiated the transfer process and Republic has informed Pesch that it intends to transfer the option shares unless Pesch obtains an injunction against Republic or provides an indemnity bond acceptable to Republic. If Republic and [First City] are permitted to re-register the option shares in CDB's name and transfer the option shares to CDB, a judgment in the instant proceedings in Pesch's favor would be rendered ineffectual. If CDB takes possession of the option shares, it can be reasonably anticipated that the stock certificates representing the option shares will be removed from the United States. If these stock certificates are removed from the United States as anticipated, Pesch will be forced to initiate new legal proceedings against CDB in the courts of a foreign state.

\* \* \* \* \* \*

22. Based upon the foregoing, Pesch is entitled to an Order of this Court temporarily restraining [First City] and Republic from transferring or re-registering the option shares from Pesch to CDB, and further, setting for hearing Pesch's application for temporary injunctive relief.

## COUNT II

*Against [First City] and Republic, For Temporary and Permanent Injunctive Relief and Surrender of Stock*

23. Pesch repeats and alleges the allegations set forth in paragraphs 5 through 17 and 19 through 21 above.

24. Based upon the foregoing, Pesch is entitled to an Order of this Court temporarily enjoining [First City] and Republic from transferring or re-registering the option shares from Pesch to CDB, and, upon final trial of this cause, to an Order of this Court permanently enjoining [First City] and Republic from doing the same, and ordering [First City] and Republic to surrender to Pesch the certificates representing the option shares and the stock powers signed by Pesch.

## COUNT III

*Against All Defendants, for Declaratory Relief*

25. Pesch repeats and realleges the allegations set forth in paragraphs 5 through 17 and 19 through 21 above.

26. CDB's knowing and willful attempt to obtain transfer of the option shares without proper payment of the full purchase price of $3,024,000 for the option shares constitutes a repudiation of the terms of the stock option since it

evidences CDB's total disregard for Pesch's rights under the stock option, and an attempt to deprive Pesch of rightful ownership of his option shares without paying the full, agreed price therefor. On March 24, 1986, after first learning that CDB intended to exercise the stock option without paying the full option price, Pesch informed CDB that only full payment would satisfy the stock option, and that partial payment would result in forfeiture of CDB's rights under the stock option. On March 28, 1986, after CDB wired partial payment to Pesch, Pesch informed CDB that partial payment did not satisfy the requirements of the stock option, and offered CDB an opportunity to remedy its breach of the stock option by paying the remainder of the stock purchase price on or before April 1, 1986. On April 2, 1986, CDB informed Pesch that it refused to pay the remaining $500,000 to Pesch. Four weeks later, on April 30, 1986, Pesch declared CDB to have forfeited all rights under the stock option.

27. Based upon the foregoing, Pesch is entitled to a judgment of this Court declaring CDB's attempted exercise of the stock option to be ineffective, declaring the stock option itself to be terminated, declaring the stock powers that have been presented to [First City] and Republic to be void, declaring rightful ownership of the option shares to rest in Pesch and directing Republic and [First City] to surrender the stock powers and the certificates representing the option shares to Pesch.

(Petition at 3–6).

4. Pesch argues:
In order to accomplish its goal of thievery CDB must surmount several obstacles, the first of which is to prevent a remand to the State Court of Texas, for in that Court the forum selection clause is unenforceable and CDB thus cannot bring the case to Switzerland.... (Pesch Response at 2).

\* \* \* \* \* \*

Pesch's reason for filing a lawsuit in Texas is simple and straightforward: no other forum could have enjoined the transfer of the option shares to CDB. By remo[v]ing this action to

On May 21, 1986, CDB removed the state case to this court. On May 22, 1986, Pesch moved to remand the case to state court. On June 6, 1986, the court entered its order denying the motion to remand.

## II.

## DISCUSSION

Pesch gives the impression in his papers that he would not oppose litigating this matter in federal court but for his fear that a federal court will be more receptive to the contention that a forum selection clause in the applicable contracts mandates that the instant dispute be litigated in Switzerland.[4] Whether or not his apprehension is well-taken remains for another day. Today's question is whether this court has subject matter jurisdiction. The court deals with the questions presented in turn.

A. Nominal or Formal Parties

28 U.S.C. § 1441(b) permits the removal of an action to federal court if there is diversity of citizenship among the "parties in interest properly joined." "Parties in interest" do not include formal or unnecessary parties, thus a plaintiff's joinder of such parties cannot defeat the federal court's subject matter jurisdiction, see *Salem Trust Co.*, 264 U.S. at 189, 44 S.Ct. at 267, and cannot prevent the removal of an action to federal court, see *Nunn v. Feltinton*, 294 F.2d 450, 453 (5th Cir.1961). The test whether or not a defendant is a nominal party is whether his role in the lawsuit is that of depositary or stakeholder. *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Local 349*, 427 F.2d 325, 327 (5th Cir.1970).

federal court, CDB is attempting ultimately to obtain a dismissal of Pesch's action based not on the merits of the case, but rather on the forum selection clause contained in Pesch's contracts. Such a dismissal would leave Pesch entirely without relief against the transfer of his option shares, and would enlist this Court unwittingly in the perpetration of CDB's scheme to rob Pesch and PHS. For this reason, and the reasons that follow, this action should be remanded to state court, where Pesch's rights to relief will be enforced. (*Id.* at 8–9).

Whether a named defendant is a nominal party depends upon the facts of each case, *id.,* as disclosed by the pleadings when the removal petition was filed, *Salem Trust Co.,* 264 U.S. at 189, 44 S.Ct. at 267.

The court has examined Pesch's state court petition [5] to determine what are the respective roles played in this lawsuit by First City and Republic. The court concludes they are mere nominal and formal parties to the actual dispute between Pesch and CDB.

This case is analogous to the one reviewed by the Supreme Court in *Salem Trust.* There the Court concluded that a party was not indispensable whose only obligation was to pay over the amount deposited with it once it ascertained which of the competing parties was entitled to the disputed sum. *Id.* at 190, 44 S.Ct. at 267. Likewise, in the instant case there is nothing in the state court pleading to indicate that Pesch seeks any relief against First City or Republic other than to preclude them from performing a duty they are required to perform under the Texas Business & Commerce Code [6] pending final resolution of Pesch's dispute with CDB. They are merely depositaries or stakeholders who are obliged to transfer and re-register the stock absent relief from this court.

A subsequent example of the *Salem* principle is found in *Kearney v. Dollar,* 111 F.Supp. 738 (D.Del.1953), where the district court held that a corporation whose shares were the subject of an ownership dispute was not a necessary or indispensable party, but was instead only a nominal and formal party, because the only connection it had with the controversy was that it was enjoined from transferring the shares to anyone other than the parties to the suit. *Id.* at 744. The *Kearney* court reasoned that the corporation's presence as a defendant could not affect removal because the

corporation had no rights to be contravened. *Id.* at 745.

This court holds that where, as here, a corporation and its transfer agent are joined as defendants (1) only to prevent their transferring and re-registering shares of the corporation's stock, to which adverse ownership claims have been made by others, and (2) to obtain a judgment directing them to surrender the shares and pertinent stock powers to the plaintiff, and for no other substantive purpose, such defendants are merely nominal or formal parties whose presence does not preclude removal.

B. Fraudulent Joinder

The question whether joinder is fraudulent arises in connection with the requirement of 28 U.S.C. § 1441(b) that there be diversity of citizenship among the parties to the action who are "properly joined." To prove fraudulent joinder, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendants in state court or that there has been outright fraud in pleading the jurisdictional facts. *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981).[7]

The burden of proving fraudulent joinder is a heavy one. *Green v. Amerada Hess Corp.,* 707 F.2d 201, 205 (5th Cir. 1983). To determine whether the burden has been carried, the court must ordinarily evaluate all the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff. *Id.* at 205. The court must normally assume all the facts set forth by the plaintiff to be true, *id.,* and, having assumed to be true all other facts alleged in the complaint by the plaintiff, must examine relevant state law and resolve all uncertainties in favor of the

---

**5.** *See* relevant excerpts at Opinion pages 1535–36, *supra.*

**6.** *See* TEX.BUS. & COMM.CODE ANN. § 8.403(b) (Vernon Supp.1986) (duty of issuer) at page 1539, *infra.*

**7.** In this case there is no contention that Pesch has fraudulently pleaded the jurisdictional facts. Thus, the court confines its discussion to whether Pesch's allegations possibly set forth a cause of action.

non-removing party. *Id.* at 206. If there is even a possibility that a state court would find that a cause of action exists against any of the named in-state defendants, the federal court must find that the in-state defendants have been properly joined, there is incomplete diversity, and the case must be remanded to the state court. *Id.* Stated another way, there must be no possibility for a valid state cause of action being set out against the in-state defendant before the court may hold that there has been a fraudulent joinder. *Id.* However, if there is no arguably reasonable basis for predicting that state law might impose liability on the resident defendants under the facts alleged, the claim is then deemed fraudulent and lack of diversity will not prevent removal. *Tedder,* 590 F.2d at 117.

Against this backdrop of Fifth Circuit standards, the court has evaluated the contentions made by Pesch in his motion to remand and Pesch's state court petition and concludes, as a matter of law, that there is no reasonable basis demonstrated for predicting that Pesch has stated a cause of action against First City or Republic that is cognizable in Texas state court.

■ Pesch contends there is no fraudulent joinder because he "has a proper cause of action for injunctive relief and recovery of possession of the option shares against both First City and Republic." (Pesch Response at 11). This argument can be easily rejected because it confuses the existence of a *cause of action* with the availability of a *remedy.* Pesch's claim in the state petition, reduced to its essence, is against CDB for alleged breach of the parties' stock option agreement. He contends he has a cause of action against CDB that precludes CDB from entitlement to the 210,000 shares of Republic stock. To prevent CDB from obtaining the shares, Pesch prays for an injunction against First City and Republic and for an order directing them to surrender the stock powers and share certificates. He does so because CDB has already presented the shares to First City and requested their re-registration and transfer. Nowhere in his petition, however, does Pesch even intimate that either of the Texas defendants has done anything for which it could be held liable in a Texas court. If injunctive or declaratory relief is ultimately granted, it will be because of liability on a cause of action asserted against CDB which has, as a mere incidence, the issuance of injunctive relief that directs the conduct of Republic and First City.

■ Moreover, apart from Pesch's own theory, the court cannot discern from Pesch's state court petition a basis in Texas law for concluding that there is a valid state cause of action set out against the Texas defendants. In the instant case the shares were presented to First City for transfer. Pesch had previously advised First City, by means of a letter written by his counsel, that he had an adverse claim to the shares. First City advised Pesch that the transfer would be effected and the shares re-registered unless within 30 days Pesch obtained a restraining order, injunction, or other process from a court of competent jurisdiction or filed with Republic an indemnity bond to protect Republic and its agent from any loss suffered by reason of an adverse claim. Thereafter, before First City effected any transfer, Pesch obtained in state court a temporary restraining order. Nowhere in the state petition does Pesch allege that First City's conduct was wrongful; indeed, he could not have so alleged because First City acted according to Texas law.[8]

---

8. In the state petition Pesch concedes this point inferentially. He states:

Republic and [First City] will not be harmed by the relief requested herein, because they do not possess any ownership interest in the option shares and because Articles 8.403 and 8.404 of the Business and Commerce Code of the State of Texas protect [First City] and Republic when they act in reliance upon the orders of this Court. Accordingly, this Petition presents an appropriate case for the waiver of any requirements for the filing of bonds that may apply to the instant litigation. (Petition at 4–5).

 Republic is an "issuer" of securities within the meaning of TEX.BUS. & COMM.CODE ANN. § 8.201(c) (Vernon Supp.1986), that is, a person on whose behalf transfer books are maintained. First City is Republic's transfer agent. Section 8.401 of the Code imposes upon an issuer the duty to register a transfer of a security. Pursuant to § 8.401(b), the issuer is liable to a person presenting a certificated security or an instruction for registration for loss resulting from any unreasonable delay in registration or from failure or refusal to register the transfer. However, where, as here, an adverse claim to the security is presented, § 8.403(a)(1) imposes upon the issuer the duty to inquire into the claim if written notification is received in a timely fashion. Section 8.403(b) provides that the issuer may discharge his duty as follows:

> The issuer may discharge any duty of inquiry by any reasonable means, including notifying an adverse claimant by registered or certified mail at the address furnished by him or, if there be no such address, at his residence or regular place of business, that the certificated security has been presented for registration of transfer by a named person, and that the transfer will be registered unless within 30 days from the date of mailing the notification, either:
>
>> (1) an appropriate restraining order, injunction, or other process issues from a court of competent jurisdiction; or
>>
>> (2) there is filed with the issuer an indemnity bond, sufficient in the issuer's judgment to protect the issuer and any transfer agent, registrar, or other agent of the issuer involved from any loss it or they may suffer by complying with the adverse claim.

The actions of Republic, through its transfer agent, First City, conformed to Texas law as set out in § 8.403(b).

The picture painted by Pesch's state petition, as amplified by the evidence contained in the affidavits and exhibits submitted by the parties in connection with the motion to remand, is that Republic and First City are nothing more than neutral bystanders to a battle between Pesch and CDB. The court, having evaluated all Pesch's factual allegations in the light most favorable to him, having assumed all the facts set forth by Pesch to be true, and having resolved any uncertainties in favor of Pesch as the non-removing party, concludes that there is no possibility that a cause of action exists in state court against First City or Republic. Therefore, the court holds they were fraudulently joined, that there is complete diversity, and that removal was proper.

### III.

### CONCLUSION

CDB properly removed this case to federal court. The court possesses subject matter jurisdiction. Pesch's motion to remand is DENIED.