Clyde VELTMANN, et al.,

v.

**CROWLEY MARITIME CORPORATION, et al.**

No. 1:91 CV 738.

United States District Court,
E.D. Texas,
Beaumont Division.

Feb. 19, 1992.

Edward H. Green, Michael Ray McGown, Mitchell A. Toups, Weller Wheelus & Green, Beaumont, Tex., Charles Musslewhite, Jr., Houston, Tex., for plaintiffs.

William Robert Pakalka, Fulbright & Jaworski, Houston, Tex., Gilbert Irvine Low, David J. Fisher, Orgain Bell & Tucker, Beaumont, Tex., Kevin O'Rourke, Bruce Love, Crowley Maritime Corp., Oakland, Cal., Thomas R. McDade, McDade & Fogler, James Patrick Cooney, Robert H. Etnyre, Jr., Royston, Rayzor, Vickery & Williams, Pamela Irvin Schaaf, John Alexander Irvine, Thelen Marrin Johnson & Bridges, Richard F. Callaway, Elaine Block, Callaway & Block, Gregory M. Sullivan, Brown Sims Wise & White, Houston, Tex., Thomas G. Rollins, Law Offices of Thomas G. Rollins, Farmington Hills, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

SCHELL, District Judge.

CAME ON TO BE CONSIDERED the Motion to Remand filed by Clyde Veltmann and his wife Diantha Veltmann, individually, Veltmann Corporation, individually, and Veltmann Corporation d/b/a Veltmann Engineering and Veltmann Environmental (hereinafter referred to as Plaintiffs). The Court, after reviewing the motion, the responses, the replies, the exhibits, the affidavits, and the pleadings of record, is of the opinion that the motion should be GRANTED.

### A. FACTS

Plaintiffs filed suit on July 3, 1991 against Crowley Maritime Corporation ("Crowley"), Aramco Services Company ("ASC"), Bechtel Corporation ("Bechtel"), O'Brien Oil Pollution Services of Houston, Martech U.S.A., W.J.R., Inc., and A.M.T.E., Inc. ("AMTE") in the 270th Judicial District Court of Harris County. On July 19, 1991, plaintiffs refiled suit against Crowley, ASC, Bechtel, and AMTE in Jefferson County, Texas. Plaintiffs amended their petition on July 26, 1991 to add Saudi Refining, Inc. ("SRI"), Marine Pollution Control Corporation, and Marine Pollution Control d/b/a Texas MPC, Inc. The citizenship of all the defendants, except ASC and SRI, are diverse from the Texas plaintiffs. ASC and SRI have their principle places of business in Texas. In spite of the fact that ASC and SRI are Texas citizens, ASC, SRI, Bechtel and Crowley removed this cause to federal court and take the position that ASC and SRI were fraudulently joined to destroy diversity jurisdiction. Thereafter, plaintiffs filed this motion to remand.

Plaintiffs contend that they became involved with the defendants after Clyde Veltmann developed a process for skimming oil from shallow ocean coastal regions during January, 1991. Thereafter, Mr. Adil A–Misehal of AMTE invited Clyde Veltmann to Saudi Arabia to discuss the possibility of Veltmann becoming a contractor for the cleanup of the Iraqi oil spill in

the Persian Gulf. Clyde Veltmann stayed for 58 days in Saudi Arabia and had at least eight meetings with various company representatives. Plaintiffs assert that the companies represented at the meetings were Crowley Maritime Corporation, Bechtel ·Corporation, AMTE, Marine Pollution Control Corporation, and Aramco Services Company "through Saudi Aramco." Although the affidavit of Clyde Veltmann (Affidavit of Clyde Veltmann at 1) stated that he met with representatives of ASC in Saudi Arabia, plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion to Remand admits that no direct meeting occurred between plaintiffs and ASC or SRI.

Mr. Veltmann also asserts that Saudi Aramco representatives told him that ASC was the Saudi Aramco representative in the United States, that his equipment and employees would be handled by the ASC office in Houston, Texas, and that ASC had to give him security clearance prior to entering the compound in Saudi Arabia for Saudi Aramco. (Affidavit of Clyde Veltmann at 1–2).

## B. FRAUDULENT JOINDER

██ The issue to be decided is whether either ASC or SRI, citizens of Texas, can be held liable in a state court for any of the causes of action that the plaintiffs allege. The defendants have the burden of proving their claim of fraudulent joinder. In *B., Inc., v. Miller Brewing Company*, 663 F.2d 545, 549 (5th Cir.1981) the court stated:

[t]he burden of persuasion placed upon those who cry "fraudulent joinder" is indeed a heavy one. In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.

*See Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir.1983), *reh'g denied* 714 F.2d 137, *cert. denied* 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984); *Pesch*

*v. First City Bank of Dallas*, 637 F.Supp. 1530, 1537 (N.D.Tex.1986). Both parties may submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint. The district court must then evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff. *B., Inc.*, 663 F.2d at 549; *Green*, 707 F.2d at 205; *Pesch*, 637 F.Supp. at 1537. The district court must also resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff. *B., Inc.*, 663 F.2d at 549. The standard for determining whether there has been a fraudulent joinder is the following:

If, having assumed all of the facts set forth by the plaintiff to be true and having resolved all uncertainties as to state substantive law against the defendants, the district court should find that there is no possibility of a valid cause of action being set forth against the in-state defendant(s), only then can it be said that there has been a "fraudulent joinder." *B., Inc.*, 663 F.2d at 550.

Other cases have stated the standard to be "... whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Bobby Jones Garden Apartments v. Suleski*, 391 F.2d 172, 176 (5th Cir.1968); *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir.1979). Although this standard is stated in different terms, it is clear that the defendant must prove that there is no possibility that a cause of action may be stated against the in-state defendant.

██ Furthermore, for the defendants to establish a claim of fraudulent joinder, it must be pleaded with particularity, and supported by clear and convincing evidence. *Parks v. New York Times Company*, 308 F.2d 474, 478 (5th Cir.1962), *cert. denied*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964).

██ A court should use a proceeding similar to that used for ruling on a motion for summary judgment to resolve a claim of fraudulent joinder. *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th

Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 60, 112 L.Ed.2d 35; *B., Inc.,* 663 F.2d at 549 n. 9. Taking into consideration the heavy burden placed upon the defendant, this court must decide if the defendant has proven by clear and convincing evidence that there is no possibility that the plaintiffs could obtain a judgment against either ASC or SRI in a state court.

## C. STATE LAW CLAIMS AGAINST ASC AND SRI

■ The plaintiffs have pleaded the following causes of action in their First Amended Original Petition:

(1) breach of contract

(2) promissory estoppel

(3) quantum meruit

(4) common law and statutory fraud

(5) conversion

(6) breach of fiduciary duty

(7) violation of trade secrets

(8) tortious interference with existing and prospective contracts and business relations

(9) violation of Texas anti-trust laws

Defendants must prove by clear and convincing evidence that there is no possibility that recovery for any one of these causes of action could be upheld in state court against either SRI or ASC. The defendants rely heavily upon the assertion that none of the alleged causes of action could succeed against ASC because it had no direct contact with Mr. Veltmann. However, if Saudi Aramco had the authority to act for ASC, then ASC could be held liable for Saudi Aramco's actions under the agency theory asserted by the plaintiffs. The allegations against SRI are based upon the facts that SRI is the wholly owned subsidiary of ASC and that SRI appears to be profiting from oil which has been gathered from the Iraqi oil spill using the process developed by Mr. Veltmann.

One cause of action alleged by the plaintiffs is breach of contract. In order to establish a contract, the plaintiffs must prove the following:

(1) an offer and acceptance

(2) meeting of the minds

(3) communication that each party has consented to the terms of the agreement

(4) consideration.

*Garcia v. Villarreal,* 478 S.W.2d 830, 832 (Tex.App.–Corpus Christi 1971, no writ). Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion to Remand states that ASC was a party to the contract to clean the oil spill. Plaintiffs' evidence that ASC may have been a party to the contract is found in plaintiffs' Response to Defendants' Reply to Plaintiffs' Agency Arguments. In that response, plaintiffs attach the affidavit of Charles Selby, wherein Mr. Selby states that ASC contacted him about cleaning up the Iraqi oil spill. According to Mr. Selby, he was also to be a party to the same contract that Mr. Veltmann allegedly negotiated with these various defendants. Selby further states that he was told by ASC in Houston that ASC was "one in the same with Saudi Aramco." The plaintiffs also attach an affidavit of Clyde Veltmann, wherein Veltmann swears that he and Selby were working together to negotiate a contract for oil clean up. If true, these facts may be sufficient to support a finding under Texas law that ASC had made representations clothing Saudi Aramco with apparent authority to act for ASC. ASC could therefore be held responsible for any alleged breach of contract negotiated by Veltmann with Saudi Aramco in Saudi Arabia.

Another cause of action alleged by plaintiffs is promissory estoppel. To establish promissory estoppel, the plaintiffs must prove the following:

(1) a promise

(2) foreseeability of reliance thereon by promisor

(3) substantial reliance by promisee to his detriment.

*English v. Fischer,* 660 S.W.2d 521, 524 (Tex.1983). There has been no allegation by the plaintiffs that either ASC or SRI directly made a promise to Mr. Veltmann or induced him to reveal his secret process. However, if Saudi Aramco is found to be the agent of ASC, then ASC may be liable for the allegedly broken promise of Saudi Aramco. As discussed above, the plaintiffs have tendered affidavits and sworn pleadings which, if true, provide a basis for imputing to Saudi Aramco the apparent authority to act on behalf of ASC.

Assuming the validity of the plaintiffs' agency theory, liability under state law may also be imposed upon ASC pursuant to several other claims made by the plaintiffs including fraud, conversion, breach of fiduciary duty and violation of trade secrets.

■ The plaintiffs also allege a cause of action for tortious interference with a contract, which requires proof of the following:

(1) a contract subject to interference

(2) the act of interference was willful and intentional,

(3) such intentional act was a proximate cause of plaintiff's damages

(4) actual damage or loss occurred.

*Bonham v. Flach*, 744 S.W.2d 690, 693 (Tex.App.–San Antonio 1988, no writ). Evidence that ASC committed a willful or intentional act to breach the contract is found in plaintiffs' latest response. In his affidavit, Charles Selby states that he saw equipment being transported by ASC to Saudi Arabia and that he saw the secret process developed by Mr. Veltmann and himself being used in Saudi Arabia. Even if ASC was not a party to the contract or did not give Saudi Aramco the authority to act as its agent, ASC could have committed tortious interference if ASC had knowledge of the contract, as Mr. Selby indicates, and ASC facilitated the shipment of equipment needed to implement the secret process.

Defendants have later filed Defendants' Further Reply to Plaintiffs' Agency Arguments in which they allege that there is no possibility that the cause of action of tortious interference could be upheld in a state court. Defendants' base their claim upon the fact that "agents cannot be held liable for interfering with the principal's business relations." *American Medical International v. Giurintano*, 821 S.W.2d 331 (Tex.Civ.App.—Houston [14th Dist.] 1991). However, this court has not concluded that ASC was an agent of Saudi Aramco. Defendants continue to assert that no agency relationship exists between ASC and Saudi Aramco and that ASC is totally independent of Saudi Aramco.

Moreover, the plaintiffs contend that they had an oral agreement with other defendants, such as Crowley, in addition to Saudi Aramco to perform oil spill clean up work in Saudi Arabia. Therefore, this court finds that there is a possibility that ASC could be held liable in state court for tortiously interfering with the alleged oral contract between the plaintiffs and various defendants.

## D. CONCLUSION

Based upon the foregoing analysis, the court finds that the defendants, as the removing parties, have not shown by clear and convincing evidence that there is no possibility that the plaintiffs could establish a cause of action in state court against ASC. Consequently, fraudulent joinder of ASC has not been shown, and because there is incomplete diversity, this court lacks subject matter jurisdiction over this action and it must be remanded pursuant to 28 U.S.C. § 1447(c).

IT IS, therefore, ORDERED that plaintiffs' Motion to Remand is hereby GRANTED and this action is hereby REMANDED to the 136th Judicial District Court of Jefferson County, Texas, from which it was removed.