**Clytie BEAUDOIN, Plaintiff,**

v.

**John SITES, et al., Defendants.**

**Civ. A. No. 3:94cv917.**

United States District Court,
E.D. Virginia,
Richmond Division.

May 30, 1995.

Irving M. Blank, Wells, Paris, Blank & Brown, P.C., Randolph L. Carl, Paul D. Hux, Jay Tronfeld & Associates, Richmond, VA, for plaintiff.

Franklin B. Greer, Henry M. Massie, Jr., McGuire, Woods, Battle & Boothe, Richmond, VA, for defendants.

## MEMORANDUM OPINION

PAYNE, District Judge.

On September 1, 1994, while shopping in the produce section of a Food Lion grocery store in Colonial Beach, Virginia, Clytie Beaudoin was injured when she slipped on a plant vine and fell. On December 1, 1994, Beaudoin filed a motion for judgment in the Circuit Court for the City of Richmond, Vir-

ginia, naming as defendants Food Lion, Inc. and three individuals Food Lion employees, John Sites, Eddie Brown, and Clinton Tyson ("Individual Defendants").

On December 19, 1994, the defendants removed the action to this court on the grounds of diversity jurisdiction, notwithstanding that Beaudoin and the Individual Defendants were all citizens of Virginia when the action was commenced and at the time of removal. The predicate for the claim of diversity, and for removal, was that Beaudoin is a citizen of Virginia; that Food Lion is a North Carolina corporation; and that the Individual Defendants are not proper parties to this action and they were fraudulently joined to defeat diversity. If the Individual Defendants were fraudulently joined, there is diversity jurisdiction.

On January 11, 1995, Beaudoin filed a motion to remand the action to the state court. Following briefing and a hearing on February 13, 1995, the parties engaged in discovery and supplemental briefing of the motion to remand which is now ripe for decision.

### DISCUSSION

The defendants, as the removing parties, bear the burden of proving fraudulent joinder. *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir.1993); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981); *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992). To establish that a defendant has been fraudulently joined, the removing party must prove either that "there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court" or that "there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Marshall*, 6 F.3d at 232, citing *B., Inc.*, 663 F.2d at 549. Where, as here, the removing party argues that there is no possibility that the plaintiff will be able to state a claim against the non-diverse defendant:

The burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor.

*Marshall*, 6 F.3d at 232–33.

When fraudulent joinder is at issue, "the court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" *AIDS Counseling & Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir.1990) (citation omitted). "[T]he defendants may submit affidavits and deposition transcripts; and ... the plaintiff may submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint." *B., Inc.*, 663 F.2d at 549. In this respect, the "proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R.Civ.P., Rule 56(b)." *Id.* at 549, n. 9. The court must rule in favor of the plaintiff if there is "any reasonable possibility that a state court would rule against the non-diverse defendant." *Poulos*, 959 F.2d at 73.[1]

The issue in this case is whether there is a reasonable possibility that a state court would rule against any of the Individual Defendants, all of whom are employees of Food Lion. Two recent decisions provide insight into the circumstances under which a store employee may be held liable for an injury to a third party occurring on store premises. In a recent opinion from the Circuit Court for the City of Richmond, Judge Markow states concisely the standard for employee liability:

Virginia's Supreme Court has resolved the question of whether the employee owes a duty to the third person by denominating the employee's alleged act as one of misfeasance or nonfeasance. *An employee may be liable for his own misfeasance* (i.e., performance of an affirmative act done improperly), *but not for his own nonfea-*

---

1. The court, of course, possesses the authority to assess the costs of discovery and associated attorneys fees against a removing party who erroneously raises a question of fraudulent joinder. And, if the removing defendant is unsuccessful, it is his burden to show that such assessments are not warranted.

*sance* (i.e., omission to do some act which ought to be performed).

*Harris v. Morrison, Inc.,* 32 Va.Cir. 298, 298–99 (1993) (emphasis added). In *Edmond v. Food Lion, Inc.,* No. 2:94cv840 (E.D.Va. Nov. 15, 1994), the court concluded on the following grounds that a Food Lion store manager had been fraudulently joined:

> It is undisputed that *Jackson is not the owner or operator* of the premises upon which Edmond alleges she fell. Jackson is merely the *store manager,* and he was *not even on duty* at the date and time that Edmond fell. There are *no facts* in the record *to demonstrate that Jackson had actual or constructive notice of any defects* upon the store premises. There are *no allegations that Jackson negligently hired, trained or supervised* his employees at Food Lion Store # 627. Moreover, it is not contradicted that *Jackson was not involved in the actual maintenance* of the store on or about the Time Edmond fell. Accordingly, based on the undisputed facts and the allegations in the motion for judgment, Jackson cannot be liable under Virginia law.

*Id.* at 3–4. Under Virginia law, an employee of the owner or operator of the premises in an action based on standard premises liability theories may be held liable only for affirmative acts of negligence, not merely because, in the status of employee of the owner or operator, he or she is guilty of an omission.[2] *See Miller v. Quarles,* 242 Va. 343, 410 S.E.2d 639, 641 (1991) ("an agent has a *tort* liability for injuries to a third party resulting from the agent's negligent act while acting within the scope of his employment by the principal"); *Turner v. Carneal,* 156 Va. 889, 159 S.E. 72, 73 (1931) (rejecting argument that rental agents were liable for injury to prospective lessee because agents "had had the renting of the premises for a period of years" and therefore must have known of the dangerous condition; burden on plaintiffs "to show a positive act of negligence" by defendants).

The distinction between an employee's liability for his misfeasance, as opposed to nonfeasance, has been recognized in other jurisdictions and in scholarly works as well. *See Clarke v. Hoek,* 174 Cal.App.3d 208, 219 Cal. Rptr. 845, 849 (1985) ("the rule that conduct is negligent where some unreasonable risk of danger to others would have been foreseen by a reasonable person is applicable only to cases of misfeasance. Absent a special relationship giving rise to a duty to act, a person is under no duty to take affirmative action to assist or protect another."); *Jones v. Archibald,* 45 A.D.2d 532, 360 N.Y.S.2d 119, 122 (1974) ("an agent who has undertaken no individual responsibility, nor expressly obligated himself in a contractual relationship with a third party cannot be held liable for nonfeasance only ... There must be affirmative acts of negligence or wrongdoing ... Unless the agent has assumed authority and responsibility, as if he were acting on his own account, then the duty which the agent fails to perform is a duty owing only to his principal and not to the third party to whom he has assumed no obligation."); Richard Malamud, *Employee Liability for Economic Losses of Employer's Customers: A California Based Examination of the Question of Duty,* 30 Tort & Ins.L.J. 195, 223–24 (1994) (recognizing distinction between misfeasance and nonfeasance where employee liability to injured third party is at issue, and noting that employer may be liable to a plaintiff under theory of *respondeat superior* even if employee does not owe duty to the plaintiff); Restatement (Second) of Torts § 314 (1965) ("[t]he fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action"). These authorities draw precisely the same line between misfeasance and non-

---

2. The court recognizes that the decison in *Edmond* suggests that failure to act might be a basis for holding an employee liable for injury to a third party if the employee has actual or constructive notice of a hazardous condition. *Edmond,* No. 2:94cv840 (E.D.Va. Nov. 15, 1994) at 4 (citing absence of "facts in the record to demonstrate that Jackson had actual or constructive notice of any defects upon the store premises" as one reason that plaintiff could not succeed against employee). Considering that in *Edmond* there was an absence of evidence and that constructive notice was not central to the decision, the comment about that subject is to be treated as dicta.

feasance as was established by the decision in *Harris*. And, they explain fully the rationale for the distinction.

The Virginia test must then be applied to the record in this action. Beaudoin's theory of liability as to the Individual Defendants has been a moving target throughout this litigation. Indeed, as the defendants correctly assert, Beaudoin has advanced three different theories of liability: (1) that the Individual Defendants acted negligently by placing a plant in a part of the store where it was reasonably foreseeable that its leaves or vines might fall to the floor onto the path of customers; (2) that the Individual Defendants acted negligently by placing a plant in the store in such a way that its vines or branches extended to the floor onto the path of customers; and (3) that the Individual Defendants "had constructive notice of the vines/leaves on the floor and ... failed to remove them." (Plaintiff's Supplemental Mem., p. 5). For the reasons discussed below, the court concludes that none of these three theories is sufficient to support a finding of liability as to any of the three Individual Defendants.

## A. Sites and Brown

■ Beaudoin's claims against Sites and Brown are easily resolved because, after discovery, Beaudoin tacitly concedes that she cannot prevail against either Sites or Brown. Notwithstanding her reluctance to foreswear these meritless claims, in her supplemental brief, Beaudoin states: "[W]hile there is testimony that Mr. Sites and Mr. Brown had no direct responsibility for the plant display, the plaintiff alleges that *one of the defendants*, Clinton Tyson, affirmatively placed a plant, that he knew or should have known was the type plant [sic] that sheds its vines and/or leaves, in a well travelled area of the store." (Plaintiff's Supplemental Mem., p. 4) (emphasis added). Her supplemental brief concludes and with the statement that: "The plaintiff has shown an affirmative act of negligence on the part of *one of* the defendants." (Plaintiff's Supplemental Mem., p. 5) (emphasis added). The court considers these statements as telling concessions that there is no evidence of any sort that would support a claim that either Sites and Brown committed a negligent act. Nor does Beaudoin identify any evidence of negligent conduct by Sites or Brown. The uncontested evidence is that neither had any role in placing the plant where it was placed and that neither Sites nor Brown were in any way connected to Beaudoin's accident and injury, let alone a cause of that injury. Thus, on this record, it is clear that there is no possibility that Beaudoin could establish a claim against Sites and Brown. Therefore, the court concludes that they were fraudulently joined.

## B. Tyson

After discovery, Beaudoin's position is that Tyson, the manager of the perishables department, is individually liable for Beaudoin's injuries. Because Beaudoin's theory of liability has been somewhat chameleon-like over the course of this litigation, changing its color to fit the legal landscape, it is necessary now to address each of Beaudoin's legal theories respecting Tyson's alleged liability.

■ First, Beaudoin argues that Tyson negligently placed the plant at a location in the store where it was reasonably foreseeable that its vines would fall onto the path of customers, thereby presenting the risk of injury. The Supreme Court of Virginia has expressly rejected this theory of liability. In *Winn–Dixie Stores, Inc. v. Parker*, 240 Va. 180, 396 S.E.2d 649 (1990), the Supreme Court of Virginia resolved this issue when it addressed a 1969 Fourth Circuit decision, *Thomason v. Great Atlantic and Pac. Tea Co.*, 413 F.2d 51 (4th Cir.1969). In *Thomason*, the Fourth Circuit predicted that Virginia would adopt the "method theory" of liability which it explained as follows: "If it is reasonably foreseeable that a dangerous condition is created by, or may arise from, the means used to exhibit commodities for sale, and a patron is harmed as a consequence, we think the Virginia law demands reimbursement of the victim." *Id.* at 52.

■ In 1990, however, the Supreme Court of Virginia in *Winn–Dixie* held that "we do not adopt 'the method theory,' ... embraced by the *Thomason* court." *Winn–Dixie*, 396 S.E.2d at 651, n. 3. Beaudoin's argument is the same as that rejected in

*Winn–Dixie.* Therefore, it fails as a matter of Virginia law.[3]

■ Beaudoin's second theory of liability is that Tyson committed an affirmative act of negligence by placing the plant on display in such a way that its vines touched the floor in the path of customers. The defendants agree that an employee who engaged in such conduct could be individually liable if a customer was injured slipping on the vine. However, there is no evidence that any Food Lion employee, let alone Tyson specifically, displayed the plant with its vines touching the ground. As Beaudoin admitted in her supplemental brief: "It is true that the plaintiff cannot establish that the defendant actually placed this vine/leaves on the floor." (Plaintiff's Supplementary Mem., pp. 4–5). When Beaudoin, during her deposition, was asked whether the vine on which she slipped was "something that had fallen on the floor or was it attached to something on a table," she responded "I think it must have fallen on the floor." (Beaudoin Dep., p. 10). Beaudoin later stated that the vine "seemed to be laying on the floor." (Beaudoin Dep., p. 18). Beaudoin also described the plants on display saying: "They didn't look like there was any vine attached to it. That was down on the floor, if that's what you mean." (Beaudoin Dep., p. 28).

Given Beaudoin's candid admission on this point, her counsel argues: "[S]imply because the vine was not attached to a plant at the time of the accident does not mean it was not attached to the plant at the time it was put on display." (Plaintiff's Supplemental Mem., p. 3). This may be true. However, a theory of liability cannot live on speculation alone. Because there is no evidence in the record that a plant was displayed with its vines touching the ground, Beaudoin cannot prevail on this theory.

Beaudoin's third theory is that Tyson is liable because he was on constructive notice of a defect on the premises. Beaudoin relies heavily on the decision in *Winn–Dixie.* In that case, the Supreme Court of Virginia held that: "Because Parker failed to establish that Winn–Dixie placed the bean on the floor or that Hall missed it during his mopping, it became Parker's burden to prove that *Winn–Dixie had either actual or constructive notice of the bean's presence and failed to remove it.*" *Winn–Dixie,* 396 S.E.2d at 651 (emphasis added). From this, Beaudoin makes the following argument:

> [T]he plaintiff alleges that one of the defendants, Clinton Tyson, affirmatively placed a plant, that he knew or should have known was the type of plant that sheds its vines and/or leaves, in a well travelled area of the store. The plaintiff alleges that the *defendant because of his work experience and common sense was on notice as to the fact that vines/leaves regularly fall from plants and these vines/ leaves will come to rest in the path of customer traffic.* The employee of the grocery store could be held liable because of his affirmative act of negligence.

(Plaintiff's Supplemental Mem., p. 4) (emphasis added). Beaudoin cannot prevail against Tyson on this constructive notice theory for two reasons.

■ First, as Judge Markow held in *Harris v. Morrison, Inc.,* 32 Va.Cir. 298–99 (1993), an employee cannot be held individually liable for a third party's injuries caused by his nonfeasance or failure to act, even upon constructive notice. *Id.* at 298–99. In response to this point, Beaudoin misapplies *Winn–Dixie* by contending:

> [I]n *Winn–Dixie,* the court continues, that if the plaintiff cannot establish that the employee placed the object on the floor or that the employee missed the object on clean-up, then it becomes the plaintiff's burden to prove that the employee had either actual or constructive notice of the

---

3. Even if Beaudoin's "method theory" of liability did not fail as a matter of law, it would fail in this case because Tyson had no discretion over where the plant in question was to be displayed. The undisputed evidence reflects that where in the store a display is to be set up, and what is to be included in the display, are dictated by di- rectives from Food Lion's headquarters in Salisbury, North Carolina. (Tyson Dep., pp. 83–84); (Sites Dep., p. 43). The state court could not reasonably find Tyson liable on a method-theory of liability where the method to be used was prescribed by headquarters, not Tyson.

foreign object on the floor and failed to remove it.

(Plaintiff's Supplemental Mem., p. 4) (emphasis added). However, *Winn–Dixie* did not hold that an *employee* may be held individually liable for failure to act when he had constructive notice of a hazardous condition. *Winn–Dixie* addressed only the liability of the employer. Therefore, *Winn–Dixie* is in no way inconsistent with Judge Markow's decision in *Harris*.

Second, even if Tyson could be liable theoretically for failure to act upon constructive notice of a defect, he cannot be found liable on the undisputed facts of this record. Constructive notice of a defect "may be shown by evidence that the defect *was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition.*" *Grim v. Rahe, Inc.*, 246 Va. 239, 434 S.E.2d 888, 890 (1993) (emphasis added). "Hence, if the evidence fails to show *when* a defect occurred on the premises, the plaintiff has not made out a *prima facie* case." *Id.* In the *Winn–Dixie* case on which Beaudoin relies, the court pointed to *Colonial Stores, Inc. v. Pulley*, 203 Va. 535, 125 S.E.2d 188 (1962), which rejected a constructive notice argument by holding that there was no "showing of the length of time" that the object was on the floor. *Id.* at 190. The court held that it was just as logical to infer that it was placed on the floor an instant before" the accident "as it is to infer that it had been there long enough that [the proprietor] should, in the exercise of reasonable care, have known about it." *Id.*

 Beaudoin does not argue that the vine was on the floor for a period of time the length of which would permit Tyson to be charged with knowledge of its presence there. Rather, Beaudoin argues that Tyson "was on notice as to the fact that vines/leaves *regularly* fall from plants and these vines leaves *will* come to rest in the path of customer traffic." (Plaintiffs' Supplemental Mem., p. 4) This argument, however, is nothing more than a repackaging of the "method-theory" of liability which the Supreme Court of Virginia rejected in *Winn–Dixie*. Therefore, the court rejects Beaudoin's third theory of liability.

Having concluded that Tyson cannot be held liable for Beaudoin's injury under any of the theories that Beaudoin advances, the court finds that Tyson was fraudulently joined.

### CONCLUSION

For the reasons stated above, the court finds that defendants Sites, Brown, and Tyson were fraudulently joined and dismisses these three defendants pursuant to Fed. R.Civ.P. 21. There is diversity between Beaudoin and the remaining defendant, Food Lion. Therefore, Beaudoin's motion to remand is denied.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.