# CIRCUIT COURT OF LOUDOUN COUNTY

Cecilia Rodriguez,
Administrator of the
Estate of Ubaldo Rodriguez,
deceased

    v.

Northern Virginia
Electric Cooperative et al.

September 14, 2009

Case No. (Civil) 52497

BY JUDGE JAMES H. CHAMBLIN

    This wrongful death action came before the Court on July 22, 2009, for argument on the demurrers of the Defendants, Northern Virginia Electric Cooperative ("NOVEC"), Bromley's Utility Consulting Services, L.L.C.

("BUCS"), and Leesburg Business Park, L.L.C. ("LBP") to the Amended Complaint filed by Cecilia Rodriguez, Administrator of the Estate of Ubaldo Rodriguez, deceased. For the reasons hereinafter set forth, the demurrers are overruled.

A demurrer tests the legal sufficiency of a complaint. *Thompson v. Skate America*, 261 Va. 121, 128 (2001). Its purpose is to determine whether a complaint states a cause of action upon which relief may be granted. *Bell v. Saunders*, 278 Va. 49, 53 (2009). A demurrer admits the truth of all properly pleaded material facts, and all reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading. However, a demurrer does not admit the correctness of any conclusion of law in the pleading. *Dodge v. Randolph-Macon Woman's College*, 276 Va. 1, 5 (2008). Each demurrer is addressed below.

The Amended Complaint contains five counts as follows:

Count I: Negligence of NOVEC, Production and Distribution of Electricity through Power Lines;

Count II: Negligence of NOVEC for Premises Liability;

Count III: Negligence of LBP for Premises Liability;

Count IV: Negligence of BUCS;

Count V: Gross Negligence (as to all defendants).

The factual allegations of the Amended Complaint are set forth in paragraphs 8 through 25 thereof as follows (verbatim):

8. On or about December 1, 2006, Plaintiff's decedent, Ubaldo, while in the course of his employment with E. E. Reed Construction, L.P., ("E. E. Reed") was working on a jobsite at the Leesburg Business Park, located at 73 Lawson Road, in Loudoun County, Virginia ("the jobsite" or "Leesburg Business Park").

9. E. E. Reed was the general contractor responsible for the construction of two office buildings at the Leesburg Business Park.

10. The owner of Leesburg Business Park was LBP.

11. LBP owned the real property upon which E. E. Reed was to construct the two office buildings.

12. Located on the real property owned by LBP were overhead power lines owned and operated by NOVEC.

13. At the time and place of the incidents described in this Complaint, NOVEC owned, operated, and maintained the overhead power lines located immediately above the jobsite on the real property owned by LBP at 73 Lawson Road.

268

14. NOVEC owned an easement at 73 Lawson Road for the overhead power lines.

15. Upon information and belief, at some point prior to December 1, 2006, BUCS was hired by LBP to coordinate the disposition of the power lines above the jobsite with NOVEC.

16. Upon information and belief, BUCS was to communicate, negotiate, or otherwise coordinate with NOVEC the movement or other safe disposition of the overhead power lines above the jobsite at 73 Lawson Road.

17. At some point prior to December 1, 2006, and as early as May 2006, NOVEC had been notified that construction work at the jobsite was being carried out in the vicinity of the overhead power lines.

18. At some point prior to December 1, 2006, and as early as May 2006, NOVEC had been notified of its need to make temporary safety arrangements of the overhead power lines in the vicinity of the construction project.

19. BUCS was in communication with NOVEC about the disposition of the overhead power lines prior to December 1, 2006.

20. LBP had notice of the need to move or otherwise make safe arrangements of the overhead power lines prior to December 1, 2006.

21. BUCS notified LBP about the need to move or otherwise make safe arrangements of the overhead power lines prior to December 1, 2006.

22. On December 1, 2006, employees of E. E. Reed were moving building materials on the job site at 73 Lawson Road. Plaintiff's decedent, Ubaldo Rodriguez, was walking on the ground near the forklift holding a guideline to help stabilize the load.

23. A portion of the forklift or load came into contact with the overhead power lines or the overhead power lines arced to the forklift or load, causing Ubaldo to be electrocuted and receive severe injuries.

24. December 1, 2006, was Ubaldo's first day of employment with E. E. Reed and his first day on the jobsite.

25. Ubaldo's injuries proximately led to his death on February 8, 2007, after his hospitalization and related medical treatment.

## Demurrer of NOVEC

NOVEC asserts several grounds in its demurrer.

First, NOVEC argues that Ubaldo Rodriguez ("Ubaldo" or "Rodriguez") was contributorily negligent as a matter of law because he engaged in conduct that violated the Overhead High Voltage Line Safety Act (the "Act") (Va. Code § 59.1-406 *et seq.*). The Act concerns work or activity in the vicinity of "overhead high voltage lines." § 59.1-406. An "overhead high voltage line" under the Act means "all above ground bare or insulated electrical conductors of voltage in excess of 600 volts." § 59.1-407. The Amended Complaint does not allege the voltage of the power lines by which Rodriguez was electrocuted or that the lines were "overhead high voltage lines." Therefore, I cannot rule on demurrer as a matter of law that the Act does apply. It is a matter to be finally determined in discovery or at trial. The demurrer of NOVEC is overruled on this ground.

Plaintiff's counsel asserts that, even if the Act did apply, the allegations of the Amended Complaint do not show that Rodriguez violated any provision thereof, *e.g.*, the ten-foot rule of § 59.1-408. While the argument is interesting, I cannot concur because I cannot determine, as stated above, that the Act does, in fact, apply.

Secondly, NOVEC argues that the illegal acts of Rodriguez' employer, E. E. Reed, prohibits any recovery. If NOVEC's argument is that E. E. Reed violated the Act, then the demurrer is overruled on this ground for the same reason it was overruled as it applied to the conduct of Rodriguez. If NOVEC's argument is that E. E. Reed had a duty to warn Rodriguez of known dangers, then I do not see how a violation of that duty, if it even exists, would shield NOVEC from liability. If NOVEC is arguing that it had a right to rely on E. E. Reed to take care of its employees and properly warn and/or supervise them so as to prevent any injury or death due to any negligence by NOVEC, then I do not agree with NOVEC. The cases cited by NOVEC, including the "sophisticated user" case of *Featherall v. Firestone*, 219 Va. 949 (1979), do not support its argument.

The demurrer of NOVEC on the ground that recovery is prohibited by the illegal acts of E. E. Reed is overruled.

Thirdly, NOVEC argues that the Amended Complaint fails to state a claim based on premises liability because there is no allegation that the overhead power lines were too low or violated any standard. This argument focuses on the duty owed to Rodriguez by NOVEC. In order to determine the duty, the status of NOVEC and Rodriguez, based on the facts alleged, must first be determined.

The Plaintiff argues that, because an easement is a real property interest, NOVEC is a property owner. I agree. Also, NOVEC is an occupant. But the duty owed to Rodriguez depends upon his status as to NOVEC. Clearly, he is not a trespasser. He was rightfully on the property of LBP, on which his employer, E. E. Reed, was constructing two office buildings. An invitee is a person who visits premises lawfully at the express or implied invitation of the occupant. *Franconia Associates v. Clark*, 250 Va. 444, 447 (1995). Although it is not specifically alleged, it is a fair inference from the facts alleged that Rodriguez was on the jobsite beneath or near the overhead power lines at the express invitation of LBP pursuant to a contract with E. E. Reed to construct the office buildings.

Because it is alleged that NOVEC had been previously notified that construction work at the job site would be carried out in the vicinity of the overhead power line, Rodriguez was, at the very least, a bare licensee, *i.e.*, one who is permitted to enter on the premises for his own convenience, benefit, or pleasure by the passive acquiescence of the occupant. *See Appalachian Power Co. v. LaForce*, 214 Va. 438, 441 (1974). I cannot conclude, based on the allegations, that Rodriguez was on the easement at either the express or the implied invitation of NOVEC. There is no allegation that NOVEC was involved in any way in the construction of the office buildings.

Being a bare licensee, Rodriguez took upon himself all the ordinary risks attached to the jobsite and the business being carried on there. NOVEC must not intentionally or willfully injure Rodriguez, but it owes him the duty of protection only after it knows of his danger or might have known of the danger and avoided it by the use of ordinary care. *Appalachian Power Co.*, 214 Va. at 441. As stated in VMJI No. 23.090, an occupant of premises has a "duty to protect a bare licensee if he knows or reasonably should have known of the danger and could have avoided the danger by the use of ordinary care."

Under Rule 3:18(b), an allegation of negligence is sufficient without specifying the particulars of the negligence. The Plaintiff has alleged sufficient facts to show that the aforesaid duty arose on the part of NOVEC. NOVEC knew, or at least should have known, of the danger created by an active overhead power line at a construction site. Failure to perform the duty imposed on NOVEC is negligence. By alleging negligence, the Plaintiff alleges that NOVEC failed to perform that duty. The Plaintiff need not, under Rule 3:18(b), allege the particulars of the negligence.

The demurrer of NOVEC on the ground that the Plaintiff failed to allege a failure to use ordinary care to have its premises in a reasonable safe condition or avoid the danger by use of ordinary care is overruled.

NOVEC also demurs on the ground that the facts alleged do not support a claim for gross negligence. Gross negligence is that degree of negligence that shows indifference to others as constitutes an utter disregard of caution or prudence amounting to a complete neglect of the safety of another. It must be such a degree of negligence as would shock fair minded people although it is something less than willful recklessness. *Green v. Ingram*, 269 Va. 281, 290-91 (2005).

NOVEC may have known as much as seven months before the incident that construction work would be carried out in the vicinity of its overhead power lines. Any entity engaged in the production and distribution of electricity is required to use a high degree of care, care commensurate with the danger involved, to prevent injury to others. *Robbins v. Old Dominion Power Co.*, 204 Va. 390, 396-97 (1963). This requirement is especially true at places where persons have a right to work or may be reasonably expected to go for work, business, or pleasure. *Appalachian Power Co.*, 214 Va. at 440.

Because of the allegations of lengthy notice to NOVEC and the involvement of electricity, I decline to rule on demurrer as a matter of law that NOVEC was not grossly negligent.

I do not overrule the demurrer on the gross negligence ground because I agree with the "judicially inefficient" argument of the Plaintiff in her Brief in Opposition. As compelling as that argument might be, it is not appropriate considering the ruling of our Supreme Court in *Ford Motor Co. v. Benitez*, 273 Va. 242 (2007).

NOVEC also argues that the allegations of the Amended Complaint show, as a matter of law, that Rodriguez was contributorily negligent because "he was stabilizing a load that was over twenty (20) feet high and was in the process of moving this load while under high powered overhead power lines." The demurrer is overruled on this ground because it is a classic "speaking demurrer." *See* W. Hamilton Bryson, *Bryson on Virginia Civil Procedure* § 6.03(5)(a) (4th ed., 2005). There are no allegations in the Amended Complaint that the load "was over twenty (20) feet high" or that the power lines were "high powered."

Even if the aforesaid allegations were contained in the Amended Complaint, I would still overrule the demurrer because there is, at the very least, no allegation of the height of the power lines above the ground. It is not the function of a demurrer to have the trial judge decide whether a plaintiff will ultimately prevail, but only to decide whether a plaintiff has pleaded enough to allow the suit to proceed. For a more eloquent expression of this concept, see the opinion of Judge Clifford R. Weckstein of the Roanoke City Circuit Court in *NRC Management Services Corp. v. First Va. Bank-Southwest*, 63 Va. Cir. 68 (2003).

In NOVEC's demurrer, it finally argues that the Plaintiff has not stated a cause of action against it on the ground that it failed to move the power lines that it was contractually obligated to move. At argument, counsel for NOVEC did not argue this ground. The demurrer is overruled on this ground because the Amended Complaint does not assert the claim to which NOVEC has demurred.

The demurrer of NOVEC is overruled.

## Demurrer of BUCS

The Demurrer of BUCS rests on four primary grounds, as follows:

1. Because there are no allegations that BUCS was the owner, operator, or maintainer of the overhead power lines, there is no duty in tort owed by it to Rodriguez;

2. Any duty imposed on BUCS arose by virtue of a contract;

3. BUCS cannot be liable because the allegations against it are of a failure to act (non-feasance) as opposed to an affirmative act of negligence (misfeasance), and there can be no liability for non-feasance;

4. The facts alleged do not support a claim for gross negligence.

BUCS also asserted in its demurrer that the suit was filed by an administrator rather than a personal representative as required by Va. Code § 8.01-50. At oral argument, counsel for BUCS did not argue this ground. If BUCS still stands on this ground, it is overruled. The definition of "personal representative" in Va. Code § 1–234 includes an administrator.

BUCS filed a Supplemental Memorandum asserting as an additional ground for its demurrer that any recovery is precluded by the provisions of the Act. As I stated above in discussing the demurrer of NOVEC, I cannot determine from the allegations of the Amended Complaint that the Act does apply. Hence, the demurrer of BUCS on this ground is overruled.

The first three primary grounds can be discussed together. While there is no allegation that BUCS owned, operated, or maintained the power lines in question, I do not think that the Plaintiff's claim against BUCS is based on its being an owner, operator, or maintainer of the power lines.

The duty of due care to maintain premises in a reasonably safe condition is upon the owner or occupant, and such duty cannot be delegated to an independent contractor. *Love v. Schmidt*, 239 Va. 357, 360-61 (1990). An independent contractor may be hired to perform the duty, but the duty cannot be delegated to the independent contractor. I do not think that the Plaintiff is alleging that BUCS is liable because the duty of LBP to use due care toward an invitee such as Rodriguez has been delegated to BUCS, an independent

contractor, by LBP pursuant to their agreement. I think that the Plaintiff's theory is that the duty imposed upon BUCS is one imposed by common law arising from BUCS' agreement with LBP.

The Plaintiff alleges the following facts. BUCS was hired by LBP "to coordinate the disposition of the power lines above the jobsite with NOVEC." It was to "communicate, negotiate, or otherwise coordinate with NOVEC the movement or other safe disposition of the overhead power lines above the jobsite at 73 Lawson Road." BUCS was in communication with NOVEC about the disposition of the overhead power lines prior to the incident. BUCS notified LBP about the need to move or otherwise make safe arrangements for the overhead power lines.

In the Plaintiff's allegations of negligence by BUCS, she alleges that BUCS "had a duty to exercise an ordinary degree of care to the worker on the job site under the circumstances in its notification and negotiation with NOVEC about the safe disposition of the overhead power lines." She alleges in Count IV that BUCS was negligent because of the following:

1. It failed to make or negotiate a proper and safe disposition of the overhead power lines;

2. It failed to properly communicate with NOVEC regarding the safe disposition of the overhead power lines;

3. It failed to follow through and ensure that safe arrangements had been put into effect by NOVEC pertaining to the overhead power lines before work was performed under the lines;

4. It failed to communicate properly with E. E. Reed, NOVEC, and/or LBP about the status of the electricity flowing through the overhead power lines.

BUCS argues that there can be no liability on an independent contractor hired by an owner or occupant for a dangerous condition on the premises unless the independent contractor created the dangerous condition. It cites several cases for the proposition that such an independent contractor can only be held liable for misfeasance as opposed to non-feasance.

The Plaintiff argues that independent contractors can be liable in tort to third persons citing several cases.

After reviewing the cases cited, I hold that, certainly, independent contractors can be held liable in tort provided they violate a common law duty imposed on them separate and distinct from any duty imposed by contract. It is ridiculous that an independent contractor can avoid liability in tort for negligence (violation of a common law duty) merely because one is an independent contractor. The cases involving ice and snow removal by an independent contractor are very much on point. *See, e.g., Artrip v. E. E. Berry*

*Equip. Co.*, 240 Va. 354 (1990); *Boland v. Rivanna Partners*, 69 Va. Cir. 308 (2005). The Virginia General Assembly had to have felt that an independent contractor can be liable for negligence when it eliminated the acceptance–by– owner defense by enacting Va. Code § 8.01-39.

I conclude that merely being an independent contractor does not shield BUCS from liability for negligence.

BUCS argues that an agent of an owner, or an independent contractor of an owner, cannot be liable in tort as a result of a dangerous condition on the property unless the agent or independent contractor created the dangerous condition. It cites *Turner v. Carneal*, 156 Va. 889 (1931), as authority for its argument.

After reading *Turner* I do not agree with BUCS. *Turner* concerned a real estate rental agent, not an independent contractor. A real estate rental agent was sued by a prospective tenant for personal injuries she sustained when she fell through an open trap door into the cellar while she was being shown the property by the agent. There was no evidence that the agent created the dangerous condition, and there was no direct evidence that the agent was even aware of the trap door or that it was left open.

The focus in *Turner* was on the duty of the real estate rental agent while showing the property to a prospective tenant. Our Supreme Court described the burden upon the plaintiff prospective tenant as the burden "to show *a positive act of negligence* on the part of the defendants, that is, a breach of duty they owed to the plaintiff." 156 Va. at 893 (emphasis added). Also, the Court approved a jury instruction given by the trial court that in order to find the agent liable, "it must appear from a preponderance of the evidence that the agent has been guilty of *some specific act of negligence.*" 156 Va. at 895 (emphasis added).

BUCS has construed "a positive act of negligence" and "some specific act of negligence" as requiring an act of commission or misfeasance amounting to negligence as opposed to an act of omission or non-feasance. I do not agree with that interpretation. The Court in *Turner* clearly described the duty of a real estate rental agent in showing the property to a prospective tenant as it was set forth in a jury instruction on approval by the Court as follows:

> The court instructs the jury that if you believe from the evidence in this case that on the day in question the plaintiff inquired of the defendants about the property at 7 East Grace Street, and that the defendants thereupon instructed and had their employee to call for and carry the plaintiff to view the

premises, it thereupon became and was the duty of the said defendants, by and through their said employee, to use reasonable care for the safety of the plaintiff while viewing said premises, if there was any danger to be encountered by the plaintiff in inspecting the premises with a view of leasing them, which was known, or, under all the circumstances of the case, ought to have been known, to the defendants. And if the jury further believe from the evidence that, by reason of the trap door being open at the time of the visit, the premises were rendered unsafe and that *the defendants knew, or, in the exercise of ordinary care ought to have known, of this condition of the open trap door* upon the occasion in question, that thereupon it became and was *the duty of the said defendants to warn the plaintiff* of said condition, and, if the jury believe from the evidence the defendants failed in this duty and as direct and proximate result thereof the plaintiff was injured, without fault on her part, then you must find for the plaintiff.

*Id.*, 156 Va. at 894 (emphasis added).

A failure to warn is an act of omission. So, clearly, the Court did not hold that such a real estate rental agent could only be liable for an act of commission or misfeasance. The duty is to use reasonable care for the safety of a prospective tenant viewing the premises. *Turner* does stand for the broad proposition asserted by BUCS.

BUCS also cites *Beaudoin v. Sites*, 886 F. Supp. 1300 (E.D. Va. 1995), as authority that an independent contractor must be guilty of misfeasance to be held liable. I do not agree. *Beaudoin* was a fraudulent joinder to defeat diversity jurisdiction case involving the liability of employees, not agents or independent contractors. In *Beaudoin* the U.S. District Court followed the decision of Judge Markow of the Richmond City Circuit Court in *Harris v. Morrison, Inc.*, 32 Va. Cir. 298 (1993), that an employee may be liable to a third party, *e.g.*, a store customer, for his own misfeasance, but not for his own non-feasance.

The Virginia Supreme Court squarely addressed the distinction between actions for breach of contract and for tort in *Oleyar v. Kerr, Trustee*, 217 Va. 88 (1976), and, again, in *Richmond Met. Auth. v. McDevitt, Street, Bovis, Inc.*, 256 Va. 553 (1998), when it stated:

If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.

217 Va. at 90, 256 Va. at 558.

The Plaintiff is not trying to convert a breach of contract claim into a tort claim similar to the situation in *Richmond Met. Auth.* The snow removal cases, like the ones I referred to above, clearly show that a duty imposed by a contract can exist along side a common law duty. It is not an either/or situation. The question is whether, as alleged, BUCS had a duty apart from its contractual duty.

Negligence results from the failure to perform a duty imposed by common law. Therefore, BUCS can only be liable for negligence if it failed to perform a duty to Rodriguez imposed on it by common law. BUCS argues that any duty imposed on it arises under its contract with LBP and not by common law. The Plaintiff appears to base her argument on the Restatement (Second) of Torts § 324(A) that: "when a person undertakes to render services to another, which he should recognize as necessary for the protection of a third person, he is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking." I consider this a foreseeability argument, *i.e.*, it is foreseeable that other people would be affected by BUCS' actions or failure to act.

As alleged, BUCS knew that there would be construction work near or under an energized power line. LBP contracted with BUCS because of the construction work. BUCS knew, or should have known, of the dangers of an unenergized power line. The services to be provided by BUCS would benefit not only LBP but also anyone working on the jobsite under the power line. I think it is similar to the snow removal cases. BUCS should have recognized that the services it undertook to perform by agreement were necessary for the protection of a third person, *i.e.*, anyone working at the jobsite near or under the energized power line, a dangerous condition, which power line was the subject of BUCS' agreement with LBP.

Under the facts as alleged in the Amended Complaint, I cannot rule now as a matter of law that any of the four failures to act as alleged by the Plaintiff do not amount to negligence. Whether any of the things alleged constitute negligence will be determined later based on all the circumstances, which will be revealed during discovery or at trial. The function of a demurrer is not to determine whether the Plaintiff will ultimately prevail, but to determine if enough has been alleged to allow the case to go forward. The Plaintiff has alleged sufficient facts to allow her negligence claim against BUCS to go forward.

The demurrer of BUCS is overruled on the first three grounds.

BUCS in its fourth ground argues that the Amended Complaint does not allege sufficient facts to support a claim for punitive damages. The demurrer is overruled on this ground for the same reasons that the demurrer of NOVEC on this same ground is overruled.

The demurrer of BUCS is overruled.

### *Demurrer of LBP*

The demurrer of LBP asserts that the Amended Complaint does not allege facts to support a claim for punitive damages. The demurrer is overruled for the same reasons that I overruled the demurrers of NOVEC and BUCS on the same ground.